BEEZER, Circuit Judge:
 

 For the second time, we concern ourselves with the bankruptcy of Center Wholesale, Inc. (Center). Our prior opinion recites the facts and procedural history of this case.
 
 See In re Center Wholesale, Inc., 759
 
 F.2d 1440 (9th Cir.1985) (before Judges Wright, Pregerson and Poole). The instant appeal raises the question of whether a trustee in bankruptcy or a debtor in possession may force the “reverse marshaling” of assets.
 
 [1]
 
 We hold that he may not and therefore reverse the district court’s affirmance of Judge Rainville’s summary judgment dismissing Owens-Coming Fiberglas Corporation’s (Owens-Coming’s) adversary complaint.
 

 In this appeal, Center and Owens-Coming agree on several points. Center accepts Judge Rainville’s conclusion that Owens-Corning has a valid perfected security interest in Center’s Owens-Corning inventory and proceeds. Center also concedes the invalidity of that portion of Judge Rainville’s opinion which holds that the value of Owens-Corning’s interest must be reduced by post-petition payments to Union Bank. Owens-Corning accepts as binding our prior decision that Owens-Corning could not require Union to marshal non-Owens-Corning assets. Owens-Corning now presents two issues: (1) whether the prior panel, in deciding that Owens-Corning could not require marshaling, also decided that all amounts paid to Union in satisfaction of its pre-petition senior lien were necessarily from proceeds of Owens-Corning inventory, and (2) whether reducing the collateral to cash and requiring bankruptcy court approval prior to expenditure constitutes adequate protection.
 

 ANALYSIS
 

 We review de novo the bankruptcy court’s grant of summary judgment.
 
 In re Daley,
 
 776 F.2d 834, 836 (9th Cir.1985).
 

 1.
 
 “Reverse Marshaling”
 

 Although Owens-Coming accepts the conclusion that Owens-Corning was not entitled to require marshaling, Owens-Corning contends that, in our prior decision, we did not decide that Owens-Corning was entitled only to the value of its junior lien less the value of Union’s senior lien. Owens-Corning argues that our prior decision leaves open the factual question of whether Union actually satisfied its senior lien from non-Owens-Corning assets. Owens-Corning argues alternatively that if the prior panel decided that Owens-Corning’s interest was limited to the value of its lien less the value of Union’s lien, such a holding was dictum and not binding on this court. Center relies entirely on our prior decision.
 

 Considered in isolation, the language of our prior opinion could lead to the conclusion that we decided this issue adversely to
 
 *543
 
 Owens-Corning. Center points to the following statements:
 

 (1) “For the purposes of the following discussion, we will assume that Owens-Corning had a valid junior security interest and that Owens-Corning’s valuation of Center’s inventory is correct. This would give Owens-Coming a valid security interest in the portion of Owens-Coming inventory (allegedly worth $224,303) that exceeds the $990,000 debt Center owed Union Bank.
 

 759 F.2d at 1446 (hereinafter referred to as Statement 1).
 

 (2) “If Owens-Coming cannot force Union Bank to marshal its collateral, then Union can satisfy its entire $990,000 claim out of the Owens-Coming inventory, leaving Owens-Coming $224,303 worth of the inventory to apply against Owens-Coming’s claim.”
 

 759 F.2d at 1447, n. 17 (hereinafter referred to as Statement 2).
 

 (3) “Our holding, therefore, limits Owens-Coming’s property rights to the portion of Center’s Owens-Coming inventory that exceeds in value Union Bank’s senior lien, namely, $224,303 worth of Owens-Coming goods under the alleged facts.”
 

 759 F.2d at 1447 (hereinafter referred to as Statement 3).
 

 (4) “Our holding that the CCO [cash collateral order] is void to the extent it permitted Center to foreclose Owens-Coming’s security interest in the portion of Center’s Owens-Coming inventory that exceeded in value Union Bank’s senior lien does not, therefore, require that Owens-Coming be placed in the precise position it would have occupied had Judge King never approved the CCO.
 

 759 F.2d at 1451 (hereinafter referred to as Statement 4).
 

 Considered in context, it is clear that we did not decide that Owens-Corning’s interest was limited to the value of its lien less the value of Union’s senior lien. In the prior opinion, we focused solely on the validity of that portion of the CCO that provided Union with a post-petition lien at the expense of Owens-Corning’s prepetition lien. We recognized that the valuation of Owens-Coming’s interest was the subject of Judge Rainville’s order and not at issue in the prior appeal.
 
 See
 
 759 F.2d at 1446. Specifically, we noted that Judge King’s order contemplated that Judge Rainville would trace the source of the cash collateral. 759 F.2d at 1446 n. 14. We did not expressly reject Judge King’s determination that tracing would be required. To the contrary, we directed Judge King to make valuation findings himself if he was unable to adopt Judge Rainville’s findings.
 

 The language from our prior opinion, which we quote above, is consistent with Owens-Coming’s position. Statement 1 indicates that we labored under several assumptions. We assumed that Union had satisfied or would satisfy its claim out of Owens-Coming inventory, although we did not expressly state as much.
 

 Statement 2 merely states that Union “can” satisfy its claim out of Owens-Corning inventory. Statement 2 does not indicate that Union
 
 must
 
 satisfy its claim out of Owens-Coming collateral. Again, Statement 2 merely assumes that if Union could satisfy its claim out of Owens-Coming inventory, it would do so. Our language in footnote 17 supports the view that we merely assumed as much only for the sake of discussion. In footnote 17, we spoke in the prospective, suggesting that Union might or might not choose to satisfy its $990,000 claim out of Owens-Corning inventory. 759 F.2d at 1447, n. 17.
 

 Statement 3, admittedly, is more troublesome. It “limits” Owens-Coming’s property rights. That statement, however, served only to summarize our conclusion that Owens-Corning was not entitled to a marshaling order.
 
 See
 
 759 F.2d at 1447.
 
 [2]
 

 
 *544
 
 Finally, Center’s interpretation of our decision would constitute a silent departure from existing law. We have found no authority for the proposition that a trustee or debtor in possession may
 
 require
 
 a senior lienor to satisfy its claim out of a junior lienor’s collateral. To the contrary, the cases upon which we relied in our prior opinion indicate the opposite result.
 
 See In re Spectra Prism Industries, Inc.,
 
 28 B.R. 397, 399 (9th Cir. BAP 1983) (imposition of marshaling must avoid injustice to third persons, such as other lien creditors);
 
 Shedoudy v. Beverly Surgical Supply Co.,
 
 100 Cal.App.3d 730, 734, 161 Cal.Rptr. 164, 166 (1980) (marshaling is never applied when result would be inequitable). If we had intended so radical a departure from existing law, we would have stated our intentions far more clearly. We agree with the reading given our prior opinion by the author of Note,
 
 Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine,
 
 6 Cardozo L.Rev. 671, 688 (1985), that
 

 Marshaling prevents a senior secured party from willfully choosing the double-encumbered fund to the prejudice of junior secured parties. If the senior secured party does not choose the double-encumbered fund, however, there is no reason to think that a bankruptcy court would force the senior secured party to act detrimentally to the junior secured party. If the Ninth Circuit has destroyed marshaling, it has not invented a new doctrine of “reverse marshaling.”
 

 2.
 
 Adequate Protection
 

 11 U.S.C. § 363(e) entitles Owens-Coming to adequate protection of its interest in the cash collateral. Section 363(e) also provides that the trustee (debtor in possession) has the burden of proof on the issue of adequate protection. In our prior opinion we held that Center was required to prove that Center was adequately protecting Owens-Corning’s interest. 759 F.2d at 1450. At this point in the proceedings, all of the collateral has been reduced to cash. The bankruptcy court maintains control over all disbursements. Therefore, little, if any, risk of loss now exists. The only foreseeable threat to Owens-Corning’s interest is that the bankruptcy court might not adopt our “suggestion” that Owens-Corning be granted a superpriority under 11 U.S.C. § 507(b). We therefore clarify our position: Owens-Coming
 
 shall
 
 be granted a superpriority or such equivalent protection as deemed appropriate by the bankruptcy court.
 

 CONCLUSION
 

 We reverse and remand to the bankruptcy court for a determination of the value of the collateral that secured Owens-Corning’s lien and the source from which Union satisfied its prepetition lien. The value of Owens-Coming’s lien shall be reduced only by the amounts actually recovered by Union from Owens-Coming collateral pursuant to Union’s prepetition lien. Center shall bear the burden of establishing that Union was paid out of Owens-Coming assets. To the extent that Center fails to meet this burden, the bankruptcy court shall presume that Union’s interest was satisfied out of non-Owens-Coming assets. Owens-Corning shall be granted a superpriority or its equivalent for the value of its lien. Owens-Coming is entitled to recover its costs for this appeal.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The term "reverse marshaling,” refers to a situation in which the equitable doctrine of marshaling is distorted in such a way that it works to the disadvantage of a junior secured creditor.
 
 See
 
 Note,
 
 Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine,
 
 6 Cardozo L.Rev. 671, 688 (1985). In the instant case, the concept comes into play because the bankruptcy court adopted a valuation formula that would reduce the value of the junior security interest by the value of the senior security interest without considering whether the senior secured party actually obtained satisfaction from some or all of the assets to which the junior interest attached.
 

 [2]
 

 . The phrase in Statement 4 that "the CCO is void to the extent it permitted Center to foreclose Owens-Corning's security interest in the portion of Center’s Owens-Corning inventory that exceeded in value Union Bank's senior lien” merely reiterates the conclusion that Owens-Corning was not entitled to a marshaling order.