In re James Thomas **AUBREY**, a/k/a James Thomas Aubrey, Jr., Debtor.

James Thomas **AUBREY**, Appellant,

v.

William J. **THOMAS**, Appellee.

BAP No. CC–87–1573 VJMo.
Bankruptcy No. LA 85–18567 GM.
Adv. No. LA 86–1326 GM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 1989.

Decided Feb. 26, 1990.

Grant D. Telfer, Coleman & Coleman, Los Angeles, Cal., for appellant.

Brent Ayscough, Ayscough & Marar, Torrance, Cal., for appellee.

Before VOLINN, JONES and MOOREMAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Appellant debtor James Thomas Aubrey ("Aubrey") appeals summary judgment against him on four causes of action under 11 U.S.C. §§ 523 and 727. We affirm.

## FACTUAL BACKGROUND

Appellee William J. Thomas ("Thomas") was confined in a mental institution for some eleven years. His experience was the subject of a television movie produced by Aubrey and a colleague, Ron Lyon. In 1980, Thomas sued Aubrey, Lyon, and others in state court for breach of contract and damages, alleging that the defendants breached a joint venture agreement for the production and use of the movie. Upon motion by the defendants, the court bifurcated and first tried equitable issues of dissolution of a joint venture and an accounting, resulting on July 1, 1985, in an interim ruling favorable to Thomas.

Aubrey then retained new lawyers who challenged the existence of a joint venture. The court adhered to its earlier rulings and submitted the remaining issues to a jury on July 29, 1985, which returned a special verdict favorable to Thomas on August 23, 1985. The jury found that Aubrey was "guilty of conversion," proximately causing Thomas $39,000 in monetary damages. The jury found further that Aubrey's tortious conduct was "oppressive," for which punitive damages were assigned by the judge.

The court's final judgment of October 1, 1985, *inter alia* dissolved the joint venture; awarded Thomas $123,201.50 in unpaid profits and $2,750 in unpaid fees; and additionally awarded Thomas $39,000 compensatory and $400,000 punitive damages for

conversion and $9,059.09 in costs. An appeal of the judgment is pending, but has been inactive since Aubrey's lawyer withdrew.

On August 27, 1985, shortly after the state jury verdict was announced, Aubrey executed two deeds of trust affecting his California real estate in which he could otherwise have claimed an equity of about $1,100,000. The trust deeds were made in favor of "Noble, Lenal and [Kenbashe], Ltd." ("Noble"), identified as a California corporation, to secure an alleged debt of $950,000. The debt was allegedly incurred in 1981 in connection with a gold purchase financed by Noble or an affiliate doing business in Switzerland. On October 7, 1985, Aubrey recorded in California a UCC-1, also in favor of Noble, affecting all his personal property, consisting of numerous and otherwise significantly unencumbered business and investment interests. Aubrey later testified that "[u]pon discovery of a Superior Court Judgment taken against me by Mr. Thomas pursuant to the Lawsuit, the trading firm of Noble, Lenal & [Kenashe], Ltd., required me to encumber a substantial amount of my assets in their favor pursuant to an earlier gold transaction." With respect to supplemental proceedings in state court and later discovery-related and summary judgment motions in bankruptcy court, Aubrey did not provide any identifiable documentation of any transactions with the Noble firm or of the firm's existence.

## PROCEDURAL BACKGROUND

On December 17, 1985, Thomas filed an involuntary petition under Chapter 7 against Aubrey. The trustee, Max Rush, later sued and obtained default judgments, voiding the transfers to Noble as fraudulent conveyances and preferences.

On May 13, 1986, Thomas commenced an adversary proceeding against Aubrey under §§ 523 and 727 of the Bankruptcy Code[1] to prevent discharge of his state court judgment claim. He alleged seven

grounds for relief and obtained summary judgment on four, after which he dismissed the remaining three. The four successful grounds for summary judgment were (1) § 523(a)(6) (willful and malicious injury) for conversion, citing the verdict and judgment of the state court and jury; (2) § 523(a)(4) (fraud or defalcation while a fiduciary, embezzlement, or larceny), relying upon the state court results dissolving the joint venture, and on Aubrey's position as the *de facto* managing officer of the joint venture and the alleged abuse of his position; (3) § 727(a)(2) (transferring property within a year of the bankruptcy case with the intent to hinder or defraud creditors), citing Aubrey's execution of the deeds of trust and UCC-1 in Noble's favor; and (4) § 727(a)(4) (false oath in connection with the case), noting the lack of documentation of any debt to Noble, for scheduling a nonexistent debt to Noble and for testifying as to nonexistent gold transactions.

A substantial portion of the record relates to Thomas' unsuccessful efforts to obtain discovery of Aubrey's financial affairs, particularly as to any transactions with Noble. Thomas moved to strike Aubrey's answer and disallow any defenses, as sanctions for Aubrey's failure to comply with an order compelling discovery of his dealings with Noble. The court considered that motion simultaneously with Thomas' motion for summary judgment. Although Thomas contends on appeal that he obtained judgment based on either the summary judgment motion *or* the motion seeking sanctions, the court in fact denied the latter motion after finding that no documents relating to the Noble transactions existed.

The successful summary judgment motion was supported by the state court special jury verdict and judgment; orders "releasing" Aubrey's attorneys from the state court appeal; copies of documents concerning Aubrey's transfers to Noble; and financial statements, letters, affidavits, and transcripts of depositions relevant to Au-

---

1. Section references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise specified.

brey's claim that he was indebted to Noble with respect to purchase of gold bullion.

Aubrey's opposing affidavit asserted that he never intended to enter into a joint venture with Thomas; that his usual practice was instead to make an outright purchase of story rights; and that he granted security interests to Noble as an existing creditor at its insistence when it learned about the judgment in Thomas' favor, but did not transfer title and did not intend to "delay, hinder, or defraud Mr. Thomas, or any other creditor." [2] Aubrey asserted additionally that the foundation for any state court findings, based upon a joint venture between Thomas and Aubrey, was an unauthorized stipulation by his former lawyers.

By way of reply and to counter the denial of a joint venture, Thomas offered portions of the state court record, which indicated that initial defense theories and strategies revolved around the position that the parties were part of a joint venture and Thomas' action for damages was therefore precluded. Upon Aubrey's subsequent challenge to the existence of a joint venture, the judge in effect estopped Aubrey, noting that weeks were spent on a bench trial, upon Aubrey's motion over Thomas' objections, for preliminary resolution of equitable issues and that substantial evidence of a joint venture existed, including records maintained by Aubrey.

When partly granting Thomas' summary judgment motion, the bankruptcy court indicated that the state court judgment as it related to conversion and failure to account within a joint venture established *prima facie* cases under the dischargeability causes and thus required Aubrey to come forward with evidence that would be exculpatory under the Bankruptcy Code. The bankruptcy court found ultimately that Aubrey failed to raise any triable issues of fact simply by denying in his affidavit that there was a joint venture.

As to the objections to discharge under §§ 727(a)(2) and (a)(4), Thomas offered, *inter alia,* conflicting deposition testimony about the gold trading by Aubrey, one of his associates, and his accountant. The court explicitly relied instead upon Aubrey's failure to come forward with any documentation of his alleged gold loan and his admission that he executed the deeds of trust and UCC–1 at Noble's insistence to protect it with respect to Thomas' judgment. Without explicitly invoking the doctrine, the court in effect took judicial notice that a $950,000 loan for purchasing gold should be documented in some fashion. She inferred from the lack of documentation that no transaction of that nature occurred. The court inferred also from the timing of execution of the transfer documents, as well as Aubrey's admissions about his reasons for the transfers, the necessary wrongful intent under § 727(a)(2), and concluded that listing a nonexistent debt in his verified schedules constituted a false oath.

The court's findings and conclusions and judgment were entered on May 13, 1987. Aubrey timely filed his notice of appeal on May 21, 1987. He named Thomas and the trustee as appellees, but only Thomas has responded.

Aubrey, as appellant, argues primarily that he is entitled to a trial because of his assertions that no joint venture with Thomas was formed, and that Aubrey, in fact, is indebted to Noble. He argues further that Thomas has the burden under § 523(a)(6) of proving Aubrey's specific intent to injure him and that the bankruptcy court's reliance on the state court record to establish this element was improper and misplaced. Appellee Thomas emphasizes Aubrey's failure to support his positions with evidence. Additionally, he contends that the appeal is frivolous and made in further-

---

**2.** Aubrey also stated in his affidavit that Mr. Thomas was confined in "a mental institution for such felonies as attempted murder and necrophilia." Thomas moved in his reply brief to purge that allegation from the public record and for sanctions on the grounds that Aubrey knew that Thomas had not been convicted of any crime and was therefore engaging in an improper attempt to discredit him. Aubrey's lawyers later conceded that Thomas had not been convicted of any crime. Yet, his new lawyers on appeal used the statement about Thomas' alleged convictions in the opening brief.

ance of what he characterizes as Aubrey's fraudulent and criminal activities.

## ISSUES

The inter-related issues presented are whether Thomas, in seeking summary judgment, made a sufficient record on each cause of action, and whether Aubrey raised any genuine issues of material fact on dischargeability by simply denying any joint venture and on discharge by denying any wrongful intent and simply stating that his debt to Noble was bona fide.

## STANDARD OF REVIEW

We review the grant of a summary judgment motion *de novo*. *In re Center Wholesale, Inc.*, 788 F.2d 541, 542 (9th Cir.1986); *In re Stephens*, 51 B.R. 591, 594 (9th Cir. BAP 1985).

## DISCUSSION

### A. Shifting Burdens on Summary Judgment Motions

■ Bankruptcy Rule 7056 applies Rule 56 of the Federal Rules of Civil Procedure to adversary proceedings. Under Federal Rule 56(c), on a summary judgment motion, the movant in order to succeed must establish the lack of a genuine issue of material fact *and* entitlement to judgment as a matter of law. *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). The Supreme Court clarified the moving and non-moving parties' respective burdens under Federal Rule 56 in *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court concluded, with respect to a defendant's summary judgment motion based on lack of evidence material to plaintiff's products liability case, that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. As explained further in a dissent which agreed with the

principles stated by the majority but disagreed with the application:

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.

477 U.S. at 331, 106 S.Ct. at 2556, 91 L.Ed.2d at 279 (Brennan, J., dissenting) (citation omitted); *compare* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274–75.

Federal Rule 56(e) requires that an adverse party not "rest upon the mere allegations or denials" of his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Thus, once the movant has made a showing sufficient to meet his "initial burden to show the absence of a material and triable issue of fact; the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Richards*, 810 F.2d at 902 (citing *General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 971 (9th Cir.1983); *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

### B. Burden of Proof Upon Objecting to Discharge

"At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Bankruptcy Rule 4005. The rule does not address the burden of going forward with evidence, leaving it to the courts to formulate rules governing shifting burdens of production "in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector." Bank-

ruptcy Rule 4005, Advisory Committee Note (1983).

■ Accordingly, when a creditor makes out a *prima facie* case, the debtor who fails to respond with credible evidence cannot prevail in a discharge case. *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985). When discharge hinged upon disclosure of the source of a down payment on a condominium, ostensibly owned by the debtor's father but used and maintained by the debtor, the 7th Circuit held that the debtor was obligated to offer a credible explanation, stating: "It is clearly unsatisfactory to grant the debtor a discharge in a case such as this, where the debtor 'stonewalls' the creditor and refuses to credibly explain to the court his puzzling or suspect transactions." *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 888 (7th Cir.1983) (citing former Rule 407 and the related Advisory Committee Note, which are analogous to Bankruptcy Rule 4007 and the related Advisory Committee Note).

### C. Requisite *Prima Facie* Cases Under §§ 523 and 727

1. Section 727(a)(2)(A)

■ The court must deny a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition...." 11 U.S.C. § 727(a)(2)(A). The burden of proof is on the creditor to show that: (1) the debtor transferred or concealed property; (2) the property belonged to the debtor; (3) the transfer occurred within one year of the bankruptcy filing; and (4) the debtor executed the transfer with the intent to hinder, delay or defraud a creditor. *In re Roberts*, 81 B.R. 354, 379 (Bankr.W.D.Pa.1987); *Camacho v. Martin (In re Martin)*, 88 B.R. 319, 322 (D.Colo. 1988).

No dispute exists on the first three elements; Aubrey admits that he granted security interests in Noble's favor in August and October of 1985. The involuntary petition followed in December, 1985.

The only alleged factual dispute concerns the fourth element, wrongful intent. Wrongful intent may be proved by circumstantial evidence. *Martin*, 88 B.R. at 322 (D.Colo.1988). On facts analogous to those before us, the *Martin* court held that the debtor's admission that property was transferred to avoid further garnishment by a judgment creditor established a *prima facie* case under § 727(a)(2)(A). *Id.* at 322–23. The debtor there argued that he intended to pay "other creditors," but he did not identify them or demonstrate that their claims preexisted the transfers. *Id.* at 323. Finding that the debtor was "clearly playing 'hide and seek' with his assets in an effort to prevent the appellants from collecting their judgment against him," the court held further that the cause for hindering and delaying was conclusively established. *Id.*

The 9th Circuit, in a case under § 727(a)(2) and (5), also declined to accept the debtor's "self-serving statement of his intent as the best evidence of that intent." *Devers*, 759 F.2d at 754 (9th Cir.1985). Despite the ultimate burden of persuasion on the creditor objecting to the discharge, "it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case." *Id.* (citations omitted).

Here, Thomas offered credible evidence tending to show that Aubrey transferred an interest in his property to Noble within the year preceding the filing of the petition, and leading to the inference that the transfer was made with intent to hinder, delay, or defraud a creditor. Aubrey admits that the transfer was made to give Noble an interest at Thomas' expense, and has not produced any credible evidence substantiating the alleged debt to Noble or any explanation justifying the transfer. As in *Martin* and *Devers*, the creditor must prevail where the debtor responds to allegations that he was "playing 'hide and seek' with his assets" only by stonewalling the creditor's discovery efforts and making self-serving statements in an effort to justify the transfers.

### 2. Section 727(a)(4)(A)

■ The debtor's discharge may also be denied if he "knowingly and fraudulently, in or in connection with the case ... made a false oath or account...." 11 U.S.C. § 727(a)(4)(A). The creditor must prove that (1) the debtor's oath was made knowingly and fraudulently; and (2) the false oath was related to a material fact. *Roberts*, 81 B.R. at 380; *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 956 (Bankr.N.D.Ind.1988). The purpose of § 727(a)(4) "is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without the need for the trustee or other interested parties to dig out these true facts in examination or investigations;" the opportunity to obtain a fresh start is thus conditioned upon truthful disclosure. *Martin*, 88 B.R. at 323, 325 (D.Colo.1988).

At issue is Aubrey's scheduling of a $950,000 debt to Noble. No dispute arises as to Aubrey's knowledge of, and the materiality of, the alleged debt. Thomas' position is that the obligation is fictitious; Aubrey argues that he is entitled to a trial as to his intent. Fraudulent intent may be determined by circumstantial evidence. *Martin*, 88 B.R. at 323 (D.Colo.1988), *Montgomery*, 86 B.R. at 957.

Aubrey did not produce documentation of his alleged transactions with Noble in response to Thomas' motion or in response to discovery requests, even after the court issued an order compelling his response. In a case under §§ 727(a)(3) and (5), the 7th Circuit defined the debtor's burden of production as follows:

> The speculation of the bankruptcy judge or the creditors as to what may actually have been occurring is not an adequate substitute for a believable explanation by the debtor. The evidence in this case which could satisfactorily explain the events in question is far more likely to lie in the hands of a debtor than of the creditor.... To the extent that the debtor can explain these events he has an obligation to come forward and do so—

he cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation.

*Martin*, 698 F.2d at 888 (7th Cir.1983).

Like the creditor in *Martin*, Thomas can not be expected to prove the negative, *i.e.*, the nonexistence of Aubrey's alleged debt to Noble. Any evidence substantiating Aubrey's alleged debt to Noble is far more likely to lie in Aubrey's hands than Thomas's, and to the extent Aubrey can provide such evidence, he has an obligation to do so or provide a credible explanation for his failure to do so. Aubrey "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Id.* Thomas presented evidence casting serious doubt on the existence of the scheduled debt to Noble, and Aubrey has not responded with any credible evidence to substantiate that debt. Summary judgment for Thomas on his § 727(a)(4)(A) claim was therefore justified.

### 3. Section 523(a)(6)

■ Section 523(a)(6) excepts from discharge any debt for willful and malicious injury. "When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986). The court rejected the stricter standard that requires a specific intent to injure, upon which Aubrey relies, citing with approval the reasoning of *Collier on Bankruptcy*, which stated: "An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will." *Id.* at 1443 (quoting 3 *Collier on Bankruptcy* ¶ 523.16 at 523–118 (15th ed.1983)).

The primary focus is the effect of the state court judgment for conversion as enhanced by punitive damages for oppression. With respect to the requisite animus, conversion is an intentional tort. Under

California state law, punitive damages may be awarded upon *"clear and convincing evidence"* of "oppression, fraud, or malice." Cal.Civ.Code § 3294(a) (emphasis added). The jury found that Aubrey had been guilty of oppression, but not malice. The jury instructions have not been appended to the record. Malice is statutorily defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal.Civ.Code § 3294(c)(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* at § 3294(c)(2). No decisions have been found that distinguish the two terms, which were often used interchangeably or together without any distinction.[3]

The statutory definition of oppression comports with the construction of "willful and malicious injury" applied by the Ninth Circuit. Assuming that Aubrey is correct by contending that the requisite animus under § 523(a)(6) must be proven by clear and convincing evidence, that is the burden imposed under state law for the jury's punitive damages award. Cal.Civ.Code § 3294(a). We do not know what the jury understood by its finding that there was no malice. Possibly it viewed such a finding as redundant. In any event, we hold that the term "oppression" as defined and interpreted by California courts is equivalent to "malice." Therefore the jury's finding that "oppression" was established is sufficient to satisfy the "wilful and malicious" requirement of § 523(a)(6).

### 4. Section 523(a)(4)

■ Finally, judgment was granted under § 523(a)(4), excepting from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." At issue is the effect of the state court judgment for unpaid fees and joint venture profits. The bankruptcy court's written findings and conclusions cite defalcation or fraud by Aubrey as a fiduciary. As evidenced in the transcript of the oral rulings, the ultimate result depended upon the state court's dissolution of the joint venture and Aubrey's failure to come forward with evidence to support his contention that no joint venture was formed. The judge below stated that the assertion that any joint venture findings arose from an unauthorized stipulation was a matter for the state courts, and did not raise a triable issue in bankruptcy court on a dischargeability matter. We agree.

■ Aubrey further asserts that the judgment below is improper because an express trust is required under § 523(a)(4), and that such a trust cannot arise even if a joint venture were formed. While constructive or implied trusts are excluded under § 523(a)(4), express or statutory trusts are not. *Lewis v. Short (In re Short),* 818 F.2d 693, 695 (9th Cir.1987). Although the definition of fiduciary capacity as contemplated by § 523 is considered a federal question, state law should be consulted to determine when a trust exists. *Id.* (citations omitted). Under California law, partners are fiduciaries for the purposes of § 523(a)(4). *Id.* at 695 (citing *Ragsdale v. Haller,* 780 F.2d 794, 796–97 (9th Cir. 1986)). Further, joint venturers have the same fiduciary responsibilities as partners. *Ragsdale,* 780 F.2d at 797, n. 3 (citing *Leff v. Gunter,* 33 Cal.3d 508, 514, 189 Cal.Rptr. 377, 381, 658 P.2d 740, 744 (1983), 6 Witkin, *Summary of California Law* 4270 (8th ed.1973)). Thus Aubrey's status as a joint venturer with Thomas was properly established through the state court action, and that status is sufficient to establish the

---

**3.** Since the mid–1970's, most reported decisions on punitive damages have referred to malice, but not oppression. By then, the highest state court had adopted "conscious disregard of the plaintiff's rights" as an element of malice. *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 462, 113 Cal.Rptr. 711, 718, 521 P.2d 1103, 1110 (1974). The most recent decisions that cite oppression solely involve bad faith in insurers' denials of valid claims. *See, eg., Little v. Stuyvesant Life Ins. Co.,* 67 Cal.App.3d 451, 136 Cal. Rptr. 653 (1977); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).

**276**

requisite fiduciary relationship under § 523(a)(4).

## CONCLUSIONS AND ORDER

Thomas' submissions and Aubrey's admissions proved the requisite elements under § 727(a) while no genuine factual issues were raised by Aubrey. Aubrey's self-serving conclusory assertions were insufficient for successfully opposing properly supported motions for summary judgment. Aubrey's challenges to the judgment under § 523, concerning the definitions of "willful and malicious" and of "fiduciary capacity," lack merit.

Accordingly, it is ordered that the bankruptcy court's judgment and orders are AFFIRMED.