**In re Richard J. GIANGRASSO, Debtor.**

**Richard J. GIANGRASSO, Appellant,**

**v.**

**Lillian A. BUTLER, Appellee.**

**BAP No. EC–91–1370 RVAs.**
**Bankruptcy No. 289–08014–A–11.**
**Adv. No. 290–0132.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Submitted Without Oral Argument May 20, 1992.

Decided Aug. 20, 1992.

**320**

W. Scott de Bie, Sacramento, Cal., for appellant.

Jeffrey Alan Miller, Orinda, Cal., for appellee.

Before RUSSELL, VOLINN, and ASHLAND, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

The debtor appeals a determination of nondischargeability, under § 523(a)(2)(A) and § 523(a)(6)[1] for actual damages of $319,069 and punitive damages in the amount of $80,931 where the state court jury award did not identify which cause of action the award was based on. We AFFIRM the bankruptcy court's finding that the actual damages of $319,069 are nondischargeable, and REVERSE the finding that the $80,931 in punitive damages are nondischargeable.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. and to the Federal Rules of Bankruptcy Procedure, Rules 1001 et seq.

## I. FACTS

Appellee Lillian A. Butler ("Mrs. Butler") entrusted a coin collection, which consisted of numerous valuable gold coins, to her grandniece Candice Giangrasso ("Mrs. Giangrasso") and her husband Richard Giangrasso ("Mr. Giangrasso") for temporary safekeeping. The Giangrassos agreed that the entire coin collection would be returned to Mrs. Butler upon her request. Some time later, Mrs. Butler requested the return of her coin collection from the Giangrassos, but was given an excuse why the coin collection was not available. After numerous but unsuccessful requests to have her coin collection returned, Mrs. Butler sued Candice and Richard Giangrasso in June of 1984 in the Solano Superior Court (*Butler, et al. v. Giangrasso*, Case No. 87744)[2].

The case proceeded to trial in state court against Mr. Giangrasso upon theories of conversion, fraud and conspiracy to convert the coin collection. After both parties presented their evidence, the court instructed the jury on those same theories. In addition, the court gave an instruction specifically defining the prerequisites for an award of punitive damages which included the "clear and convincing" standard of proof that was required under California law. After deliberating on the evidence, the jury returned a special verdict, awarding Mrs. Butler compensatory damages of $319,069, and punitive damages of $80,931. However, the special verdict rendered by the jury did not indicate which of the three theories of recovery they awarded damages for, nor did it specify whether the punitive damages were based on fraud, oppression or malice.

On November 30, 1989, one week after the judgment was rendered against him, Mr. Giangrasso filed his petition for relief under Chapter 11. Mrs. Butler, on March 30, 1990, filed a complaint in the bankruptcy court to have her judgment against Mr.

---

2. Several months before the state court trial, Mrs. Giangrasso filed bankruptcy, precluding her from any further involvement because of the automatic stay that was in effect. This appeal relates only to Mr. Giangrasso.

Giangrasso excepted from discharge under § 523(a)(2) and § 523(a)(6) of the Bankruptcy Code. She moved for summary judgment on the basis that the state court proceedings collaterally estopped Mr. Giangrasso from litigating the dischargeability of the judgment. After taking the matter under advisement, the bankruptcy court concluded that the elements of fraud and conversion contained in the jury instructions were identical to the elements of fraud under § 523(a)(2) and conversion under § 523(a)(6). The bankruptcy court held that the state court judgment awarding compensatory and punitive damages to Mrs. Butler collaterally estopped Mr. Giangrasso from re-litigating the issues, and granted summary judgment in favor of Mrs. Butler. Mr. Giangrasso appeals.

## II. ISSUES

1. Whether the bankruptcy court erred in determining that the compensatory damages of $319,069 were non-dischargeable under § 523.

2. Whether the bankruptcy court erred in determining that the punitive damages of $80,931 were non-dischargeable under § 523.

## III. STANDARD OF REVIEW

■ We review the bankruptcy court's grant of a summary judgment motion *de novo*. *In re Center Wholesale, Inc.*, 788 F.2d 541, 542 (9th Cir.1986); *In re Aubrey*, 111 B.R. 268, 272 (9th Cir.BAP 1990).

## IV. DISCUSSION

A. *Requirements for Dischargeability Under § 523(a)(2) and (6).*

Section 523(a)(2) denies a discharge to an individual debtor for obligations for money or property obtained by "false pretenses, a false representation or actual fraud...."

§ 523(a)(2)(A) [3]. The Ninth Circuit has adopted a five part test for an exception to discharge under § 523(a)(2)(A):

(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Britton*, 950 F.2d 602, 604 (9th Cir. 1991); *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). These elements must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Section 523(a)(6) also excepts from discharge any debt resulting from "willful and malicious injury" by the debtor to another entity or the property belonging to another entity. In *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986), the Ninth Circuit has held that the requirement of "willful and malicious" in § 523(a)(6) does not require a creditor to prove that a debtor acted with intent to injure, but that there was an "intentional act which caused an injury." The court went on to say that "[w]hen a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *Id.* at 1443; *In re Aubrey*, 111 B.R. 268, 274–75 (9th Cir.BAP1990).

B. *Compensatory Damages.*

Mr. Giangrasso appeals the grant of summary judgement in favor of Mrs. Butler on her complaint to determine the dischargeability of her compensatory dam-

---

**3.** Section 523(a)(2) and (a)(6) provide in part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
.    .    .    .    .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

322

ages award of $319,069. He argues that since the state court jury award "... makes no findings of fact ... or conclusions of law ..." as to any of three theories of recovery, their judgment is merely an award of damages and should have no collateral estoppel effect in the dischargeability proceeding. More specifically, Mr. Giangrasso argues that the failure of the state court judgment to specify on which theory of recovery the compensatory damages were awarded prevents the bankruptcy court from granting summary judgment in favor of Mrs. Butler. We disagree.

The Supreme Court, in *Grogan v. Garner,* made clear that collateral estoppel does apply in nondischargeability proceedings: "We now clarify that collateral principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan,* 498 U.S. at ——, note 11, 111 S.Ct. at 658, note 11. In *Grogan,* the Court unanimously held that the preponderance of the evidence standard is the proper burden of proof to be applied to the dischargeability exceptions contained in § 523. *Id.* 498 U.S. at ——, 111 S.Ct. at 661.

■ Collateral estoppel, commonly referred to as issue preclusion, "precludes relitigation of the same issues between the same parties in different causes of action." Barry Russell, *Bankruptcy Evidence Manual,* § 1 at 1 (West 1991–92 Ed.); *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The doctrine of collateral estoppel is applicable when the following generally accepted requirements are met:

1) The issue sought to be precluded must be the same as that involved in the prior action;
2) The issue must have been actually litigated;
3) It must have been determined by a valid and final judgment;
4) The determination must have been essential to the final judgment.

Russell, *supra,* at § 4, at 17–18; *See Spilman v. Harley,* 656 F.2d 224, 227–28 (6th Cir.1981); *Matter of Ross,* 602 F.2d 604, 608 (3d Cir.1979).

■ In the case at bar, the causes of action submitted to the jury in the state court proceeding were for fraud, conversion, and civil conspiracy. The state court jury instructions read as follows:

The plaintiff has the burden of proving by a preponderance of the evidence all of the facts necessary to establish:
1) Defendant converted the gold coin collection belonging to the plaintiff;
2) Defendant fraudulently represented to plaintiff Lillian Butler that he would return the gold coin collection to her, knowing these representations to be false and intending these representations to defraud her;
3) Defendant conspired to convert the gold coin collection to his personal benefit.

The bankruptcy court, after reviewing the record of the state court which included the above jury instructions, concluded that Mrs. Butler satisfied her burden under § 523 by showing that the elements of fraud and conversion in the state court proceeding were identical to the elements required in a § 523(a)(2) and (6) proceeding. The court held that collateral estoppel was applicable to the issues decided by the jury in state court, and granted summary judgment in favor of Mrs. Butler. The court reasoned "that the jury must have followed its instructions and found that all of the elements were present for recovery under the theories of fraud and conversion." The court further stated that "[t]he defendant cannot and will not be given a second chance to litigate these issues before this court."

We agree with the bankruptcy court and hold that collateral estoppel properly applies to bar relitigation of the nondischargeability of the compensatory damages. Although the jury awarded Mrs. Butler $319,069 in compensatory damages without indicating upon which theory of recovery the award was based, it is inconceivable for this Panel to believe that the jury would not have found Mr. Giangrasso guilty of fraud, conversion or both, either of which is nondischargeable under § 523. Because both are nondischargeable under

either § 523(a)(2) or § 523(a)(6) it makes no difference which theory of recovery prevailed.

The evidence in the record indicates that Mrs. Butler entrusted her coin collection to Mr. Giangrasso, the husband of her grandniece, for safekeeping. It is also clear from the record that Mr. Giangrasso never returned the coin collection, nor did he make any attempt to do so. The jury must have believed these facts to be true, otherwise they would not have found in favor of Mrs. Butler and awarded the amount of damages that they did. These issues were actually litigated, and the state court jury found by a preponderance of the evidence in favor of Mrs. Butler. It would be a waste of judicial resources to relitigate the issues of fraud and conversion in a § 523 proceeding since it is clear to us to that the jury found that Mr. Giangrasso committed the acts complained of. Therefore, we find that the doctrine of collateral estoppel precludes Mr. Giangrasso from relitigating these issues and that the jury award of $319,069 is nondischargeable.

## C. *Punitive Damages.*

■■■■ Mr. Giangrasso also appeals the bankruptcy court's order for summary judgment as to the award for punitive damages. Clearly the jury found the existence of facts supporting nondischargeability under § 523(a)(2) or § 523(a)(6) or both. As discussed above, the jury did not indicate within which provision the award fell. Although it does not make a difference for compensatory damages, it does make a difference for punitive damages. Punitive damages are nondischargeable under

§ 523(a)(6). *In re Britton*, 950 F.2d 602, 606 (9th Cir.1991). However, they are dischargeable under § 523(a)(2). *In re Levy*, 951 F.2d 196, 199 (9th Cir.1991) *cert. denied, Palmer v. Levy*, — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *In re Ellwanger*, 105 B.R. 551, 555 (9th Cir.BAP 1989). Therefore, knowing which theory prevailed is critical to whether or not the award of punitive damages is dischargeable. We cannot tell on which theory the jury relied. The facts support either theory. That is to say, the jury could have awarded punitive damages on the basis of § 523(a)(2) or § 523(a)(6) or both. Therefore, we must reverse.

The Bankruptcy Appellate Panel has held that "the term 'oppression' as defined and interpreted by California courts is equivalent to 'malice' " thus satisfying the willful and malicious requirements of § 523(a)(6). *In re Aubrey*, 111 B.R. 268, 275 (9th Cir. BAP 1990) ("The statutory definition of oppression comports with the construction of 'willful and malicious injury' applied by the Ninth Circuit.") If this Panel were able to definitively discern that the jury found "oppression" or "malice," then under *Aubrey*, we could conclude that the award of punitives falls within § 523(a)(6) and is thus nondischargeable. But on the record before us, we cannot make that determination.

In the case at bar, the state court instructed the jury of their ability to award punitive damages if they found by clear and convincing evidence that Mr. Giangrasso was guilty of fraud, oppression, or malice [4]. The jury, however, did not specify

---

**4.** The court instructed the jury on punitive damages as follows:

If you find that plaintiff suffered damage as a legal result of the conduct of the defendant on which you base a finding of liability, you may then consider whether you should award punitive damages against defendant only, for the sake of example and by way of punishment. You may in your discretion award such damages, if, but only if, you find by clear and convincing evidence that said defendant was guilty of oppression, fraud or malice in the conduct on which you base your finding of liability.

MALICE means conduct which is intended by the defendant to cause injury to the plain-

tiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard for the rights of others. A person acts with conscious disregard of the rights of others when he is aware of the probable dangerous consequences of his conduct and willfully and deliberately fails to avoid those consequences.

OPPRESSION means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

DESPICABLE CONDUCT is conduct which is so contemptible, or miserable that it would

which. The jury may have awarded punitive damages based on oppression or malice, but we cannot conclusively determine that it did. Therefore, we must REVERSE the bankruptcy court's order of nondischargeability of the punitive damages.

## V. CONCLUSION

We AFFIRM the bankruptcy court's order granting summary judgment on the issue of compensatory damages and find that they are nondischargeable. However, we REVERSE on the issue of punitive damages and REMAND for further proceedings consistent with this opinion.

be looked down upon and despised by ordinary decent people.

FRAUD means an intentional misrepresentation, deceit, or concealment of a material

fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.