79 F.3d 1153
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Ronald C. MacINTYRE; Mary M. Pikus, Debtors.
Philip A. DeMASSA, APC; Philip A. DeMassa, Appellants,
v.
Ronald C. MacINTYRE; Mary M. Pikus, Appellees.
 No. 95-55617.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1995.
Decided March 6, 1996.
 
 1
 Before: ALARCON, RYMER, Circuit Judges, and QUACKENBUSH, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiffs-Appellants Philip A. DeMassa and Philip A. DeMassa, APC (collectively "DeMassa"), appeal an order of the Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirming an order of the United States Bankruptcy Court for the Southern District of California (the "bankruptcy court") dismissing DeMassa's Complaint Objecting to Discharge. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 On July 31, 1990, Philip DeMassa entered into a contract to sell his home in Point Loma, California to Ronald MacIntyre and Mary Pikus ("Debtors") for approximately $1.1 million. Debtors allegedly breached this sales contract on November 21, 1990, and DeMassa brought suit in the San Diego County Superior Court for the State of California. After trial and appeal, DeMassa was awarded judgment in the amount of $350,261.12, including attorney's fees.
 
 
 5
 On March 9, 1992, Debtors filed, in pro per, a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330.[1]
 
 
 6
 On June 8, 1992, DeMassa filed, with the bankruptcy court, a complaint objecting to discharge of Debtors, seeking a denial of Debtors' discharge, a dismissal of the petition, and attorney's fees. DeMassa's complaint alleged that Debtors' discharge should be denied under §§ 727(a)(2-5), to-wit: (1) Debtors knowingly made false oaths and declarations; (2) Debtors failed to satisfactorily explain the loss or deficiency of estate assets; (3) Debtors intentionally and fraudulently transferred estate assets; (4) Debtors transferred, removed, destroyed, mutilated, or concealed property of the Debtors (before filing) and of the estate (after filing). DeMassa amended his complaint on July 16, 1992, to include a claim that Debtors failed to maintain adequate records regarding their financial condition and business transactions. Two additional creditors, Prudential California Realty ("Prudential") and Lyle Butler ("Butler"), also objected to discharge, and the bankruptcy court consolidated these two cases for trial.
 
 
 7
 DeMassa, Prudential, and Butler ("Plaintiffs") presented their case to the bankruptcy court between March 29, 1993, and April 7, 1993. At the close of Plaintiffs' case, Debtors moved for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, arguing that Plaintiffs failed to establish, by a preponderance of the evidence, that the Debtors should be denied a discharge under §§ 727(a)(2-5). The bankruptcy court granted Debtors' motion, and entered its Memorandum decision on June 25, 1993. A separate judgment was entered on July 21, 1993.
 
 
 8
 DeMassa timely appealed the bankruptcy court's order to the Ninth Circuit BAP. Prudential and Butler did not appeal. DeMassa argued that the bankruptcy court erred in finding that Debtors should be granted a discharge. DeMassa also argued that the bankruptcy court applied the incorrect legal standard to his §§ 727(a)(2) and (a)(4) claims. In a memorandum decision filed February 22, 1995, the BAP affirmed the bankruptcy court's ruling. DeMassa's Motion for Rehearing was denied by the BAP on April 10, 1995. Appellant timely appealed to this court.
 
 II. STANDARD OF REVIEW
 
 9
 This court reviews BAP decisions de novo. In re Ferrante, 51 F.3d 1473, 1476 (9th Cir.1995) (citing In re Johnston, 21 F.3d 323, 326 (9th Cir.1994)). In turn, both the BAP and the court of appeals review the underlying bankruptcy court judgment. In re Johnston, 21 F.3d at 326. The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, while the court's conclusions of law are reviewed de novo. Id.
 
 III. DISCUSSION
 
 10
 11 U.S.C. § 727 lists ten general categories of actions by a debtor that may result in the denial of a discharge in bankruptcy. This appeal involves four of those categories.
 
 A. § 727(a)(2)
 
 11
 DeMassa asserts that the bankruptcy court applied the incorrect legal standard under § 727(a)(2). He argues that in analyzing his challenge the court should have examined whether Debtors acted with a reckless or cavalier disregard for the truth. The bankruptcy court held that § 727(a)(2) required actual intent to hinder, delay, or defraud creditors. We agree.
 
 
 12
 § 727(a)(2) provides for the denial of a debtor's discharge where the debtor, with intent to hinder, delay, or defraud, transfers, conceals, or destroys property of either the debtor, or the estate. § 727(a)(2) requires actual intent to hinder, defraud, or delay, which can be determined by an examination of all the facts, circumstances, and inferences therefrom. In re Adeeb, 787 F.2d 1339, 1342-43 (9th Cir.1986). "Constructive fraudulent intent cannot be the basis for denial of discharge." In re Devers, 759 F.2d 751, 753 (9th Cir.1985).
 
 
 13
 In support of his argument for a reckless indifference analysis under the § 727(a)(2) claim, DeMassa cites In re Tully, 818 F.2d 106 (1st Cir.1987). Tully, however, involved the interpretation and application of § 727(a)(4)(A), and is not relevant to a determination of the appropriate legal standard under § 727(a)(2).
 
 
 14
 We conclude the bankruptcy court utilized the appropriate legal standard in its review of DeMassa's § 727(a)(2) challenge, namely that the evidence produced by Plaintiffs must establish actual intent by the Debtors to hinder, delay, or defraud creditors.
 
 
 15
 DeMassa also claims that the bankruptcy court committed clear error in finding that the evidence submitted by Plaintiffs failed to establish actual intent by the Debtors to hinder, delay, or defraud creditors. The bankruptcy court's findings regarding lack of intent are factual, and reviewed for clear error. In re Adeeb, 787 F.2d at 1343.
 
 
 16
 DeMassa details several transactions in support of this claim. In particular, DeMassa alleges:
 
 
 17
 (1) Debtors failed to list in their petition, pre-petition payments to real estate appraiser John Guth and bankruptcy paralegal Kavanaugh;
 
 
 18
 (2) Debtors failed to list $5,000 in payments made on December 17 and 20, 1991, to their state court trial attorneys Schall, Boudreau;
 
 
 19
 (3) Debtors failed to list a payment of approximately $40,000 by Michael Pikus, father of Mary Pikus, to Wyer Corporation. This payment was in satisfaction of money owed by Debtors on a building construction contract. DeMassa also alleges that Debtors owed an additional $6,450 to Wyer, for which Michael Pikus assumed ongoing responsibility. Further, DeMassa argues that the contract between Debtors and Wyer was an executory contract, which Debtors failed to list;
 
 
 20
 (4) Debtors failed to list a payment of approximately $27,000, which was held in trust by their state appellate attorneys, Lascher and Lascher. DeMassa alleges that $10,000 of these funds was drawn to pay their bankruptcy attorney, Charles Christopher;
 
 
 21
 (5) Debtors failed to list $2,538 received as interest income on their checking accounts;
 
 
 22
 (6) Debtors made excessive payments to their Lincoln National retirement account;
 
 
 23
 (7) Debtors failed to list a potential cause of action for legal malpractice against Schall, Boudreau; and
 
 
 24
 (8) Debtors failed to list post-petition income.
 
 
 25
 In response to these allegations, Debtors asserted:
 
 
 26
 (1) The payments to Guth and Kavanaugh were contemporaneous payments for services, and need not be included in the petition;
 
 
 27
 (2) The $5,000 payment to Schall, Boudreau was a contemporaneous payment for services, and not for an antecedent debt, and therefore need not be listed in the petition;
 
 
 28
 (3) Michael Pikus paid Wyer in an effort to help the Debtors with their expenses, and they did not consider him a "creditor." Furthermore, a contract existed between Michael Pikus and Wyer;
 
 
 29
 (4) Debtors did not believe the $27,000 held in trust by Lascher and Lascher was an "asset," and they fully disclosed the existence of these funds;
 
 
 30
 (5) Debtors overlooked the receipt of the bank interest;
 
 
 31
 (6) Debtors took a loan from their retirement account in order to pay their state court litigation fees, and paid down this debt more than 90 days before filing bankruptcy;
 
 
 32
 (7) Debtors, after being advised by counsel, did not feel they had a cause of action against their state trial court attorneys; and
 
 
 33
 (8) Debtors believed that the income received post-petition was not part of the estate because it represented money earned post-filing.
 
 
 34
 The bankruptcy court reviewed these transactions, heard the witnesses' testimony, and found the Debtors' testimony in response to DeMassa's allegations to be credible. The court's evaluation included a finding that MacIntyre's testimony, "taken as a whole," was credible. Bankruptcy Court Memorandum Decision, n. 2, at 5. Those findings are entitled to deference, as the bankruptcy court is in a superior position to evaluate and weigh the evidence. Fed.R.Civ.P. 52(a); see United States v. McConney, 728 F.2d 1195 (9th Cir.1984), cert. denied, 469 U.S. 824 (1984). Claims for denial of discharge under § 727 are construed liberally in favor of the debtor, and strictly against those objecting to the discharge. In re Adeeb, 787 F.2d at 1342.
 
 
 35
 Each of the bankruptcy court's decisions is supported by evidence and reasonable explanations by Debtors. We therefore conclude that the bankruptcy court was not clearly erroneous in finding that DeMassa failed to establish the intent required to deny a discharge under § 727(a)(2).
 
 B. § 727(a)(3)
 
 36
 DeMassa's second argument is that the bankruptcy court erred in finding that Plaintiffs failed to establish grounds for denial of discharge under § 727(a)(3). DeMassa asserts that Debtors failed to maintain adequate consumer records. In particular, DeMassa claims there is an entire lack of documentation regarding:
 
 
 37
 (1) consumer records of spending approximately $6,800 on child care, automotive expenses, and food between November 1991 and March 9, 1992; and
 
 
 38
 (2) checks for approximately $8,300 spent between November 1991 and February 1992.
 
 
 39
 Debtors respond that they converted checks into cash and money orders in concern that DeMassa would seize their accounts, rendering them unable to pay current bills. Debtors also argue that, as consumers and not in business, they are not required to maintain records of every consumer transaction.
 
 
 40
 11 U.S.C. § 727(a)(3) provides, in relevant part,
 
 
 41
 (a) [t]he court shall grant the debtor a discharge, unless--(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all the circumstances of the case;
 
 
 42
 The initial burden of proof under § 727(a)(3) lies with the party objecting to the discharge, who must prove: (1) the debtor failed to maintain and preserve adequate records, and (2) that failure made it impossible to ascertain debtor's financial condition and material business transactions. In re Cox, 41 F.3d 1294, 1296 (9th Cir.1994). The "fresh start" aim of Chapter 7 must be balanced against the goal of § 727(a)(3) of providing adequate information regarding debtor's financial status.
 
 
 43
 Debtors provided extensive records of their transactions during the time periods complained of by DeMassa. They submitted receipts, bank statements, and cash expenditure breakdowns in the MacIntyre and Pikus Cash Flow Analysis, October 27, 1991 to March 9, 1992. The bankruptcy court, obliged to determine Debtors' financial status, found Debtors' testimony to be credible, and that Plaintiffs failed to establish grounds for the denial of discharge. The bankruptcy court's findings, supported by the Debtors' extensive records and their offered explanations for any lack of record-keeping, are not clearly erroneous.
 
 C. § 727(a)(4)
 
 44
 DeMassa next challenges the legal standard applied by the bankruptcy court in holding that he failed to establish that Debtors knowingly and fraudulently made a false oath or account. The crux of DeMassa's argument under § 727(a)(4) is that the bankruptcy court failed to consider whether Debtors demonstrated a reckless indifference to the truth in their statements to creditors and the court. DeMassa argues that the same facts that give rise to a claim under § 727(a)(2) support the claim that Debtors made false oaths under § 727(a)(4). Debtors assert that, just as these facts do not support a claim under § 727(a)(2), they do not justify any allegations made pursuant to § 727(a)(4).
 
 
 45
 § 727(a)(4) provides that the court shall deny a discharge where the debtor knowingly and fraudulently makes a false oath or account. The party objecting to the discharge must prove (1) that the debtor's oath was made knowingly and fraudulently, and (2) that the false oath was related to a material fact. In re Aubrey, 111 B.R. 268, 274 (9th Cir. BAP 1990).
 
 
 46
 The essence of DeMassa's argument is that the bankruptcy court failed to specifically address his "reckless indifference to the truth" argument in its Opinion. § 727(a)(4) requires a finding of a "knowing and fraudulent" false oath or account before the court may deny a discharge. There is no independent "reckless indifference to the truth" element in this section. While some courts have stated that reckless indifference to the truth is the equivalent of fraud, the ultimate question is whether fraud has been established. In re Tully, 818 F.2d 106, 111 (1st Cir.1987); Diorio v. Kreisler-Borg Constr. Co., 407 F.2d 1330, 1331 (2nd Cir.1969); In re: Kaiser; 722 F.2d 1574, 1583 n. 4 (2nd Cir.1983).
 
 
 47
 In making the ultimate determination of whether fraud has been established, the court may properly consider whether, in the court's opinion, the debtor has shown a reckless indifference to the truth. In this case, the bankruptcy court, as the trier of fact for some six days, determined that fraud had not been established. That finding was not clearly erroneous. Having made that finding, the bankruptcy court was not required to also make a finding on DeMassa's claim that the Debtor were recklessly indifferent to the truth. Since DeMassa made clear in this trial briefs and in his presentation to the bankruptcy court that his fraud claim included a claim that the Debtors were indifferent to the truth of some of their statements, the bankruptcy court, in rejecting the claim of fraud, made the finding on the ultimate question.
 
 D. § 727(a)(5)
 
 48
 DeMassa also challenges the bankruptcy court's findings regarding § 727(a)(5), which provides for the denial of a discharge where the debtor fails to satisfactorily explain the loss or deficiency of assets to meet his liabilities. DeMassa cites to the identical facts argued in support of the § 727(a)(3) claim. The bankruptcy court previously found Debtors' explanations as to their assets credible. The record includes detailed explanations regarding the disposition of assets during the time periods at issue.
 
 
 49
 Whether a debtor has satisfactorily explained a loss of assets is a question of fact for the bankruptcy court, overturned only for clear error. In re Hawley, 51 F.3d 246, 248 (11th Cir.1995) (per curiam ); Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 251 (4th Cir.1994). "This standard is adhered to because the trial judge is best able to assess the credibility and evidentiary content of the testimony of the witnesses before him." In re Hawley, 51 F.3d at 248 (citing In re Chalik, 748 F.2d 616, 619 (11th Cir.1984)). Because the issue involves a factual and credibility question, which is well supported by the Debtors' documentation, we conclude that the bankruptcy court's decision was not clearly erroneous.
 
 E. The Attorney-Client Privilege
 
 50
 Finally, DeMassa urges that the bankruptcy court erred in ruling that the attorney-client privilege between Debtors and the law firm of Schall, Boudreau had not been waived. DeMassa claims the Debtors have a cause of action in malpractice against Schall, Boudreau for their representation of Debtors in the state court breach of contract action brought by DeMassa. DeMassa urges a finding of waiver of the attorney-client privilege between Debtors and Schall, Boudreau, apparently in an effort to prove that Debtors were aware that they had a cause of action for malpractice.
 
 
 51
 The issue of waiver of an attorney-client privilege is a mixed question of law and fact, which this court reviews de novo. Home Indemnity Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1325 (9th Cir.1995). Debtors themselves have not waived the attorney-client privilege. However, DeMassa urges that this privilege passed to the Trustee, who, he claims, subsequently waived it. DeMassa offers no evidence of a waiver; in fact, the only evidence suggests that neither the Trustee nor the Debtors agreed to waive this privilege. No proof of an implied waiver is offered; DeMassa only explains what he would prove if the court found a waiver of the privilege.
 
 
 52
 Because neither the Debtors nor the Trustee waived the privilege, the court need not reach the issue of passage of the privilege to the Trustee. DeMassa provided no evidence of an implied waiver of the attorney-client privilege by Debtors; therefore, we affirm the bankruptcy court's conclusion that the attorney-client privilege between Debtors and Schall, Boudreau was not waived.
 
 IV. CONCLUSION
 
 53
 The decisions of the bankruptcy court on all challenges are AFFIRMED.
 
 
 
 *
 The Honorable Justin L. Quackenbush, Senior United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330