**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1281-KuFL |
| ) | |
| RONALD DAVID TRUPPA, JR.,   ) | Bk. No.   1:15-bk-11029-MT |
| ) | |
| Debtor.   ) | Adv. No.  1:15-ap-01103-MT |
| _____ ) | |
| TIFANIE JOUDEH,   ) | |
| ) | |
| Appellant,   ) | |
| ) | |
| v.   ) | **MEMORANDUM**[*] |
| ) | |
| RONALD DAVID TRUPPA, JR.,   ) | |
| ) | |
| Appellee.   ) | |
| _____ ) | |

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed – April 27, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances:   Michael Ross Lewis of Lewis & Ham, LLP argued for appellant; John W. Sullivan argued for appellee.

Before: KURTZ, FARIS and LAFFERTY, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Tifanie Joudeh appeals from a summary judgment in favor of chapter 7[1] Debtor Ronald David Truppa, Jr. disposing of her nondischargeability and objection to discharge claims.

Joudeh's two-page declaration filed with her summary judgment opposition was the only "evidence" she submitted in support of her claims under §§ 523(a)(2)(A) and 523(a)(6), and the story she told in her declaration was entirely discredited by her own emails, which she did nothing to challenge when Truppa submitted them in support of his summary judgment motion.

As for her objection to discharge claim under § 727(a)(4)(A), unlike the bankruptcy court, we are persuaded that the facts in the summary judgment record, when viewed in the light most favorable to Joudeh, were sufficient to permit a reasonable trier of fact to find in her favor on all of the elements necessary for a § 727(a)(4)(A) claim. This does not mean that Joudeh is likely to win at trial on this claim. It only means that, given the facts in the summary judgment record, Joudeh's § 727(a)(4)(A) claim should have survived Truppa's summary judgment motion.

Accordingly, we AFFIRM the portion of the bankruptcy court's summary judgment disposing of Joudeh's §§ 523(a)(2)(A) and 523(a)(6) claims, and we REVERSE and REMAND for further proceedings on Joudeh's § 727(a)(4)(A) claim.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

**FACTS**

We rely on the uncontroverted facts in the record. Truppa is one of the founders, officers and directors of the Santa Catalina Film Festival, a non-profit public benefit corporation formed in 2011. The Festival holds an annual film festival on Catalina Island, off the coast of Southern California. The Festival's activities have always included, among other things, seminars regarding film production and marketing, and pitch sessions during which attendees could submit creative ideas and receive immediate feedback from film industry representatives. The seminar and pitch session aspects of the Festival changed names from time to time. For the 2013 Festival, they were known as the Catalina Film & TV Market and for the 2014 Festival they were known as the Catalina Film & TV Summit.

For the 2011 Festival, Joudeh and her law firm provided pro bono legal services to the Festival and also co-sponsored a gathering known as the Mimosa Mixer. In return for those contributions, Joudeh's law firm received advertising and acknowledgments in Festival publications.

Joudeh's role in the Festival was much the same in 2012, but in 2013 her role began to change. At a meeting in June 2013, Joudeh and Truppa met with Gena Vazquez – a volunteer who served as director of the Festival's seminars in 2012 and every year thereafter. At the June 2013 meeting, the parties apparently discussed Joudeh helping Vazquez recruit panelists for the September 2013 Festival's Catalina Film & TV Market.

According to Truppa, at the June 2013 meeting and in follow up email correspondence, Joudeh never proposed any sort of

3

personal compensation or any sort of personal benefits in exchange for her help in recruiting industry executives to participate in the Festival's September 2013 seminars and pitch sessions. Instead, she asked the Festival to cover the cost of her firm's co-sponsored party and to make sure there were plenty of perquisites for the participating industry executives she recruited. The emails corroborate Truppa's account:

> [Joudeh:] So, I'm jumping on this ASAP. **The only thing I ask for is that if I spend this much time putting this together, that I (or Steff) don't have to come out of pocket for the Soiree.** I will still pay for the invite to be designed and printed and will try to get the same champagne sponsor again though.
>
> [Truppa:] We will cover the Soiree - Just to clarify (Rental property/space, decorations/bar setups, alcohol sponsors)? Anything else I'm missing?
>
> [Joudeh:] **MUSIC!! Also, I told X that food is a necessity (light apps like cheese/crackers, chips/dips (NICE dips), fruit, cold meats ... especially if we are going to take the late eve slot.
>
> [Joudeh:] **The main item, which I know you know, is that we cover everything for the execs while they are on the island. Dinners/Lunches/Transportation/Liaison contacts, etc.**
>
> [Truppa:] So are you including this in Soiree Cost? We would do this with/for any of our panel guests as well, which now their presence will be part of a festival component (Market), not just the Soiree. Is that what you're saying/asking?
>
> [Joudeh:]**No, I was asking you to verify that once my guys hit the port in LA, everything is going to be taken care of for them. Food, transportation on the island, housing, liaison services, "fun time" (discussed below) etc.

Truppa Decl. (June 28, 2016) at Ex. 2 (emphasis added).

Joudeh has told a much different story. According to her, in August 2013, she and Truppa entered into an oral agreement pursuant to which they would be partners in a new business known

4

as the Catalina Film & TV Summit. Joudeh claimed that, in accordance with this agreement, the first Summit was held on September 18 and 19, 2013, and she used her contacts and proprietary email database of 16,000 people to promote the Summit and recruit industry executives to serve as Summit panelists. She also claimed that she coordinated schedules and transportation for the participating industry executives, prepared panel schedules, topics and panelists, and herself participated in Summit panels, pitches and other events. She further claimed that she introduced Truppa to her industry contacts.

In exchange for these services, Joudeh maintains, Truppa promised her 15% of Summit net profits, co-management of the Summit, the title and position of Summit Director, a percentage commission of any Summit sponsorship funds, a salary to replace the percentage commission as soon as the Summit had sufficient funds to pay her a salary, and 20% ownership of the company owning Summit.

Joudeh's story of an August 2013 agreement is contradicted by emails the parties exchanged after the September 2013 summit, in early November 2013. In them, Joudeh refers to her "deal with the fest" and makes it clear – in her own words – that this deal was just being proposed by her and had not been agreed to or promised by Truppa. Also, there is no mention of any prior proposals, negotiations, agreements or promises concerning Joudeh's proposed deal.

Another series of emails – from the spring of 2014 – clearly reflect that the parties still had not struck a deal and

5

that they still were discussing proposed deal terms. Indeed, Joudeh's emails express frustration over the lack of progress on specific terms: the fact that she initially thought the parties had reached an "understanding on" some of the individual deal terms only to find out later that Truppa had taken those terms "off the table." This is the language of negotiation and not the language of a promise or an agreement.

Shortly thereafter, in or around April 2014, Truppa rejected Joudeh's "final and best offer" and the parties terminated their negotiations. In August 2014, Joudeh filed a lawsuit in the Los Angeles County Superior Court against the Festival and Truppa, and in March 2015, Truppa commenced his chapter 7 bankruptcy case.[2] In Truppa's bankruptcy case, Joudeh initiated an adversary proceeding seeking to except from discharge her disputed claim against him and objecting to his receipt of a discharge from any of his debts.

The operative version of Joudeh's complaint – her second amended complaint – states claims for relief under §§ 523(a)(2)(A), 523(a)(6) and 727(a)(4)(A). Joudeh's §§ 523(a)(2)(A) and 523(a)(6) claims were based on her allegations that Truppa, during the summer of 2013, fraudulently entered into a binding agreement with her without any intention

---

[2]The parties' excerpts of record only include a fraction of the materials in the bankruptcy court's summary judgment record. Notwithstanding their omissions, we have exercised our discretion to review the full record, which is available to us via the bankruptcy court's electronic docket and the document images attached thereto. See Franklin High Yield Tax-Free Income Fund v. City of Stockton, Cal. (In re City of Stockton, Cal.), 542 B.R. 261, 265 n.2 (9th Cir. BAP 2015).

6

to ever perform his part of the agreement. Joudeh's § 727(a)(4)(A) claim was based on her allegations that Truppa fraudulently omitted certain assets, liabilities and income from his bankruptcy schedules.

Truppa filed a summary judgment motion, which the bankruptcy court granted. The bankruptcy court pointed out that the only evidence Joudeh submitted in support of her § 523 claims was her own two-page declaration, which the court described as conclusory. The bankruptcy court further explained that Joudeh had done nothing to counter Truppa's email evidence that the parties were discussing terms for a proposed agreement in November of 2013 – months after Joudeh alleged the agreement had been entered into. The bankruptcy court additionally observed that the spring 2014 emails (again, which Joudeh did nothing to counter) further contradicted Joudeh's claim that the parties had reached a final, binding agreement in the summer of 2013. Indeed, the court noted, Joudeh's own statements in the emails acknowledge that no deal had been reached between the parties.

In ruling on Joudeh's § 727(a)(4)(A) claim, the bankruptcy court determined that there was no proof that Truppa actually owned the assets he allegedly omitted. Nor was there any proof that he received any undisclosed income. As for omitted liabilities, the only omitted liability Joudeh complained of was Joudeh's own disputed claim. The bankruptcy court noted that, while Joudeh's claim was not listed on Truppa's initial Schedule F, Joudeh's lawsuit was listed in Truppa's initial statement of financial affairs. The court further noted that Joudeh's claim was added to Truppa's amended Schedule F within two days of his

7

§ 341(a) meeting of creditors.

In addition to the general lack of evidence of omitted assets and liabilities, the bankruptcy court alternately held that any such omitted assets and liabilities were immaterial and were not knowingly or fraudulently concealed.

The bankruptcy court entered summary judgment in favor of Truppa on August 23, 2016, and Joudeh timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court commit reversible error when it granted summary judgment in favor of Truppa?

**STANDARD OF REVIEW**

We review de novo the bankruptcy court's summary judgment ruling. Salven v. Galli (In re Pass), 553 B.R. 749, 756 (9th Cir. BAP 2016).

When we review a matter de novo, we give no deference to the bankruptcy court's ruling. Ulrich v. Schian Walker, P.L.C. (In re Boates), 551 B.R. 428, 433 (9th Cir. BAP 2016); Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011).

**DISCUSSION**

**1. Summary Judgment Standards**

Summary judgment should be granted when there are no genuine issues of material fact and when the movant is entitled to prevail as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett,

8

477 U.S. 317, 322–23 (1986). Material facts are those that may affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And issues are genuine only if the trier of fact reasonably could find in favor of the nonmoving party on the evidence presented. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 1997).

In fact, Civil Rule 56 "mandates" entry of summary judgment when, after adequate time for discovery, the nonmoving party fails to present evidence in response to the summary judgment motion sufficient to establish an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. As the Supreme Court in Celotex explained, "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

Thus, while the movant has the initial burden of identifying the portions of the record demonstrating the absence of a genuine issue of material fact, id. at 323, once the movant has come forward with uncontroverted facts entitling it to relief, the burden then shifts to the nonmovant to demonstrate that there are specific and genuine issues of material fact necessitating a trial. Id. at 324. The nonmovant must go beyond the pleadings and introduce or point to specific evidence in the record supporting its position. Id.

When considering summary judgment, we must view all facts genuinely in dispute "in the light most favorable to the non-moving party." Scott v. Harris, 550 U.S. 372, 380 (2007).

9

And we must draw all reasonable inferences in the nonmoving party's favor. Id. at 378. Nonetheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**2.    The Bankruptcy Court's § 523(a)(2)(A) Ruling**

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." As set forth in her second amended complaint, Joudeh based her § 523(a)(2)(A) claim on a theory of promissory fraud, which generally requires:

> (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promisee.

Behnke v. State Farm Gen. Ins. Co., 127 Cal. Rptr. 3d 372, 380 (Cal. App. 2011).[3]

---

[3]On the one hand, California law generally controls whether Truppa has any liability to Joudeh. See Hassanally v. Republic Bank (In re Hassanally), 208 B.R. 46, 49 (9th Cir. BAP 1997) (citing Butner v. United States, 440 U.S. 48, 54-55 (1979)). On the other hand, the Restatement (Second) of Torts typically informs us as to what constitutes nondischargeable fraud. See Field v. Mans, 516 U.S. 59, 68-70 (1995); Apte v. Romesh Japra,
(continued...)

10

It is axiomatic that there can be no claim for promissory fraud without evidence of a promise made. See generally Restatement (Second) of Torts § 530(1), cmt. c (1976) ("Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit."); Lazar v. Superior Court, 49 Cal. Rptr. 2d 377, 381 (Cal. 1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

The bankruptcy court, here, correctly noted that Joudeh's statements in her own emails flatly contradicted her assertions that Truppa promised her certain entitlements in exchange for her services. In this respect, this appeal reminds us of Scott v. Harris, supra. The Scott court held:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380. In Scott, the Supreme Court was presented with a video depicting a car chase that was fundamentally at odds with the plaintiff's version of events. Id. at 379. The plaintiff in Scott contended that Officer Scott's actions in intentionally bumping his car near the end of

---

[3](...continued) M.D., F.A.C.C., Inc. (In re Apte), 96 F.3d 1319, 1324 (9th Cir. 1996). Thus, we look to both California law and the Restatement for guidance in resolving the parties' dispute regarding Truppa's alleged debt to Joudeh and its potential nondischargeability.

11

the car chase forced him from the road, caused him grievous bodily injury and constituted an excessive use of force. Id. at 375. On review to the Eleventh Circuit Court of Appeals, the Eleventh Circuit affirmed the district court's denial of Officer Scott's motion for summary judgment, opining that, on summary judgment, the court was obliged to accept the plaintiff's conflicting account of the car chase, notwithstanding what the car chase video showed. Id. at 375, 378-79, 380-81.

The Supreme Court reversed, explaining that the video "quite clearly" contradicted plaintiff's version of the car chase and that the plaintiff had not challenged the video as being altered in any way. Nor did plaintiff argue "that what it depicts differs from what actually happened." Id. at 378. The Supreme Court, more than once, acknowledged the court's duty to view the facts and make reasonable inferences in the light most favorable to the nonmoving party, id. at 377, 78, but still held that Officer Scott was entitled to summary judgment because the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." Id. at 380-81.

Here, the role of Scott's videotape is played by Joudeh's own emails. Joudeh made no attempt in the bankruptcy court to challenge the authenticity of the emails or to argue that they do not accurately depict the true nature and status of the parties' discussions regarding Joudeh's role in the Festival and its seminars and pitch sessions. Nor has she done so on appeal.

12

She simply has told a different story that is at odds with her own emails – a story which she told in a conclusory, two-page declaration.

Thus, in keeping with <u>Scott</u>, we hold that Joudeh's assertion that Truppa promised her certain entitlements in exchange for her services was so utterly discredited by her own emails that no reasonable jury could have believed her. As a result, Joudeh failed her summary judgment burden of pointing to evidence in the record demonstrating an essential element of her promissory fraud claim: the existence of a promise Truppa made with no intent to perform.

Perhaps realizing that her promissory fraud claim suffered from a fatal deficiency, Joudeh's summary judgment opposition, and her appeal brief, also alluded to a different subspecies of fraud – namely fraudulent concealment. However, Joudeh did not allege fraudulent concealment in her second amended complaint. Moreover, her two-page declaration in opposition to Truppa's summary judgment motion only made a passing reference to Truppa's alleged nondisclosure. According to Joudeh, Truppa never told her that the seminar and pitch session aspects of the Festival were part of a nonprofit organization and that there could be no profits or ownership for her to share in as she had proposed. Joudeh further complains that "[Truppa] continued discussions with me as if there was to be a for-profit business."

Assuming without deciding that Joudeh somehow preserved for appeal her fraudulent concealment claim (even though she never alleged fraudulent concealment in her complaint), this claim suffers from a defect similar to her promissory fraud claim.

13

More specifically, Joudeh did not meet her summary judgment burden of pointing to facts in the record from which a reasonable trier of fact could find all of the elements of a fraudulent concealment claim.

Among other things, a fraudulent concealment claim requires proof that the defendant had a duty to disclose the information allegedly concealed. Restatement (Second) of Torts § 551 (1977); LiMandri v. Judkins, 60 Cal. Rptr. 2d 539, 543-44 (Cal. 1997); Hoffman v. 162 North Wolfe LLC, 175 Cal. Rptr. 3d 820, 826-27 (Cal. App. 2014). In the absence of a fiduciary relationship, a duty to disclose typically does not arise unless there exists between the parties a relationship from some sort of business transaction – like that "between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." Hoffman, 175 Cal. Rptr. 3d at 827 (citing LiMandri, 60 Cal. Rptr. 2d at 543).

The problem with Joudeh's fraudulent concealment claim is that the so-called business transaction between Joudeh and Truppa did not advance to a point where Truppa became subject to any duty to disclose. As pointed out above, Joudeh's own emails establish that the parties never reached agreement on Joudeh's future involvement in the Festival. Furthermore, Joudeh has not cited any authority establishing that parties involved in contract negotiations that **do not** result in the parties entering into a contract owe any disclosure duty to one another. Nor are we aware of any such authority. Furthermore, Joudeh did not demonstrate (or even allege) any other basis under which a duty to disclose might have arisen.

14

In short, summary judgment was correctly granted against Joudeh's § 523(a)(2)(A) claim because there was no evidence in the record to support essential elements of her two fraud theories.[4]

**3.    The Bankruptcy Court's § 727(a)(4)(A) Ruling**

Under § 727(a)(4)(A), the court may deny a debtor a discharge if the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ."  The creditor must prove that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." Retz v. Samson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010).  The principal purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate and complete information to work with without having to conduct costly and time-consuming investigations. Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 274 (9th Cir. BAP 1990)).  Thus, omissions in the debtor's schedules can constitute false oaths for purposes of § 727(a)(4)(A). Searles v. Riley (In re Searles ), 317 B.R. 368, 377 (9th Cir. BAP 2004); In re Wills, 243 B.R. at 62.

**a.    Omissions**

Joudeh initially complained of three different types of

---

[4]Because Joudeh's opening appeal brief contains no argument pertaining to her § 523(a)(6) claim, we decline to address it. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 485 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

15

alleged omissions: (1) Truppa did not list her as a creditor in his initial Schedule F; (2) Truppa did not list as income expense reimbursements he received from the Festival; and (3) Truppa did not list as assets certain films he allegedly owned. On appeal, Joudeh has focused exclusively on the allegedly omitted films, and she confirmed at oral argument before this Panel that her appeal of the bankruptcy court's § 727(a)(4)(A) ruling was limited to the issue of the omitted films. Accordingly, we will limit our review of the § 727(a)(4)(A) ruling to this issue.

To support her allegation that Truppa or his unincorporated sole proprietorship – Truppa Entertainment – owned certain films, Joudeh relied on Truppa's discovery responses. In those responses, Truppa made the following rather ambiguous statement in response to Joudeh's request for admission that he did not list in his bankruptcy schedules any "interest" he had in any films: "Admit with explanation. I do not have any interest in films with any value." In responding to a similar question regarding Truppa not listing any interest Truppa Entertainment might have in any films, Truppa similarly stated: "Admit with explanation. Truppa Entertainment does not have any interest in films with any value." Of course, the phrasing of these two responses suggests, by negative implication, that Truppa and/or his sole proprietorship Truppa Entertainment might have had an ownership interest in some films Truppa considers valueless.

In his declaration accompanying his reply brief, Truppa attempted to "clarify" his statement regarding his interest in films: "With respect to what I did and did not list as assets as far as films go, I do not own any interest in any films, and my

16

services and [those of] my company Truppa Entertainment have always been work-for-hire or work-for credit."

The bankruptcy court determined on the summary judgment record that there was no evidence from which a reasonable trier of fact could conclude that either Truppa or his sole proprietorship Truppa Entertainment owned any films. While Truppa's reply declaration statement is unequivocal and straightforward by itself, Truppa's prior discovery responses clouded the issue. We recognize that Truppa cannot (and did not need to) prove the negative – his nonownership of any films – and that his ambiguous discovery responses were slim evidence of actionable omissions. Even so, we are persuaded that a reasonable trier of fact could disbelieve Truppa's attempts to clarify his prior discovery responses and could infer from those discovery responses some sort of undisclosed film ownership interests. Even a single omission from the debtor's schedules may be sufficient to state a claim under the plain language of § 727(a)(4)(A). See U.S. Tr. v. Stokes (In re Stokes), 451 B.R. 44, 85–86 (Bankr. D. Mont. 2011).

### b. Materiality

Additionally, the bankruptcy court concluded that all of the alleged omissions were immaterial. In reaching this conclusion, the bankruptcy court seemingly looked at all of the surrounding circumstances and apparently determined that the alleged omissions were insignificant when viewed in the context of the case. We disagree with the bankruptcy court's methodology. The § 727(a)(4)(A) materiality standard is very broad and includes just about any information that has any bearing on the debtor's

17

finances.  As stated by the Ninth Circuit, "A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." In re Retz, 606 F.3d at 1196 (internal quotation marks omitted) (quoting Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 173 (9th Cir. BAP 2007), aff'd & adopted, 578 F.3d 1167, 1168 (9th Cir. 2009)); see also Garcia v. Coombs (In re Coombs), 193 B.R. 557, 566 (Bankr. S.D. Cal. 1996) (considering materiality at length and concluding that "there is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions").  Under the prevailing legal standard, we simply cannot say that the allegedly omitted films were immaterial under  § 727(a)(4)(A).

### c.   Knowingly and Fraudulently

In the § 727(a)(4)(A) context, the debtor's conduct was knowing if he or she acted deliberately or consciously and the debtor's conduct was fraudulent if (1) the debtor made the false statements or omissions in his or her bankruptcy schedules, (2) knowing that the misstatements or omissions were inaccurate at the time he or she made them, and (3) with the intention and purpose of deceiving his or her creditors.  See In re Khalil, 379 B.R. at 173 (citing Roberts v. Erhard (In re Roberts), 331 B.R. 876, 884 (9th Cir. BAP 2005), aff'd, 241 F. App'x 420 (9th Cir. 2007)).

The debtor's fraudulent intent may be demonstrated by circumstantial evidence and inference, and the court may infer

18

fraudulent intent based on a "pattern of falsity." In re Wills, 243 B.R. at 62. "Reckless indifference or disregard for the truth . . . is not sufficient, alone, to constitute fraudulent intent." In re Retz, 606 F.3d at 1199 (citing In re Khalil, 379 B.R. at 173-75).

Nothing in the record or in Truppa's alleged nondisclosures comes anywhere close to rising to the level of a pattern of falsity or a reckless indifference or disregard for the truth. Thus, the viability of Joudeh's § 727(a)(4)(A) claim hinges on whether no reasonable trier of fact could have inferred Truppa's culpable state of mind from his failure to disclose the allegedly omitted films.

This is a difficult standard for the summary judgment movant to meet. Indeed, "[s]ummary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent." In re Wills, 243 B.R. at 65; see also In re Gertsch, 237 B.R. at 165 ("Where intent is at issue, summary judgment is seldom granted."). On the other hand, "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." In re Gertsch, 237 B.R. at 165 (quoting Medina-Munoz, 896 F.2d at 8).

Notwithstanding the inherent difficulty of granting summary judgment where intent is at issue, some bankruptcy courts in our circuit have granted summary judgment on § 727(a)(4)(A) claims, and we have reviewed and upheld some of those judgments. See, e.g., Sfadia v. Dongkuk Int'l, Inc. (In re Sfadia), 2007 WL

19

7540987, at *13 (Mem. Dec.) (9th Cir. BAP Sept. 5, 2007); In re Aubrey, 111 B.R. at 274; U.S. Tr. v. Totten (In re Totten), 2014 WL 690616, at *5-6 (Mem. Dec.) (Bankr. D. Haw. Feb. 20, 2014); see also Wicklund v. Robert D. Johnson Trust (In re Wicklund), 2016 WL 5339412, at *10 (W.D. Wash. Mar. 28, 2016);

The bankruptcy court made no specific intent assessment with respect to Truppa's nondisclosure of the allegedly omitted films. Nor can we independently conceive how the bankruptcy court could have conclusively determined on summary judgment that Truppa did not harbor a fraudulent intent in not disclosing the films. At bottom, in the summary judgment context, we are obliged to make our own independent determination as to whether no reasonable trier of fact could have found for Joudeh on the intent and knowledge issues. On this record, we are persuaded that a trier of fact reasonably could have inferred from the presented facts – when taken in the light most favorable to Joudeh – that Truppa knowingly and fraudulently omitted from his schedules his interest in certain undisclosed films.

In sum, the bankruptcy court erred when it granted summary judgment in favor of Truppa on Joudeh's § 727(a)(4)(A) claim.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's summary judgment is AFFIRMED IN PART and REVERSED IN PART, and this matter is REMANDED for further proceedings consistent with this decision.

20