**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. NV-17-1072-TiFL |
| | ) | |
| ANTHONY THOMAS and WENDI THOMAS; AT EMERALD, LLC, | ) | Bk. No. 3:14-bk-50333-BTB |
| | ) | |
| | ) | Adv. No. 3:14-ap-5067-BTB |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ANTHONY THOMAS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[*] |
| | ) | |
| JOHN BEACH, AS TRUSTEE OF THE BEACH LIVING TRUST DATED JANUARY 22, 1999, | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on December 1, 2017
at Reno, Nevada

Filed - January 16, 2018

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:    Laury Miles Macauley of Macauley Law Group, P.C. argued for appellant Anthony Thomas; Joseph Went of Holland & Hart LLP argued for appellee John Beach, as Trustee of the Beach Living Trust Dated January 22, 1999.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: TIGHE,[**] LAFFERTY, and FARIS, Bankruptcy Judges.

## INTRODUCTION

This appeal arises from a grant of summary judgment in favor of plaintiff John Beach as Trustee of the Beach Living Trust Dated January 22, 1999 ("Beach").  Beach made a motion for summary judgment (the "Motion") in this adversary proceeding on claims under § 523(a)(2)(A)[1], Nevada state law fraud, and § 727(a)(4)(A).  The bankruptcy court granted the Motion by order entered on February 21, 2017.

Admittedly, debtor and defendant Anthony Thomas ("Thomas") failed to file a written response to the Motion; nevertheless, the evidence introduced in support of the Motion was inadequate. Specifically, Beach provided insufficient proof of the required false statements, and the court's finding of knowledge and fraudulent intent must have been based, impermissibly, upon material inferences drawn against the nonmoving party.  We therefore REVERSE and REMAND.

## FACTS[2]

---

[**]Hon. Maureen A. Tighe, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.

[1]Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]We have exercised our discretion to review the bankruptcy court docket and various documents filed through the electronic docketing system.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9
(continued...)

-2-

This case involves a $500,000 loan secured by a 23 kilogram black schist stone containing a 22,500 carat emerald, known as the "Thomas Emerald." The Thomas Emerald was purchased by Thomas on September 17, 2001 for $20,000 in Sao Paulo, Brazil. Thomas obtained a "Certificado" dated November 5, 2001, providing an appraisal of the Thomas Emerald and estimating it to be worth $800,000,000. A portion of the Certificado reads:

> In my 35 years as a professional, I have never encountered anything similar, and due to its uniqueness, there is nothing I can refer to in order to establish a monetary value for this rock. Consequently, it is entirely up to the owner of the crystal and the party interested in purchasing it to establish the crystal's market value.
>
> If I were to quote the commercial value of this stone, it would be superior to the value of the solid block found in the British Museum, Great Russell Street, England WCI which measures 203 x 172 x 160 mm, weighs 3,296 gr. And is worth US$ 792 million (seven-hundred, ninety-two million dollars). The specimen in this report, which weighs 1,204 grams (6,020 cts) more than the rock in the British Museum, I estimate is worth US$800 million (eight-hundred million dollars).

The Certificado is signed by a "Dimitri Paraskevopulos, Expert Appraiser and Gemologist." Thomas claims to have obtained subsequent "appraisals" of the Thomas Emerald for "over $200,000,000," and a signed asset purchase agreement dated February 5, 2009 for $340 million. However, no evidence of any subsequent appraisals or the referenced sale, other than statements by Thomas, exists in the record.[3] By all accounts,

---

[2](...continued)
(9th Cir. BAP 2003).

[3]Beach submitted an appraisal to the bankruptcy court in support of the Motion, but the court declined to admit the appraisal into evidence.

-3-

however, the Thomas Emerald is unique and therefore very difficult to value.

At some point between 2001 and 2013, Thomas transferred the Thomas Emerald to AT Emerald, LLC, a Nevada limited liability company ("AT Emerald"), with himself as the sole member. By 2013, Thomas became liable for $4.5 million in connection with a settlement agreement with Kenmark Ventures. In order to satisfy that debt in part, Thomas sought to borrow money using the Thomas Emerald as collateral.

Thomas met Beach through Beach's wife and her cousins. Around January 17, 2013, AT Emerald executed a promissory note (the "Note") evidencing the trust's loan to AT Emerald of $500,000 at 7% interest per annum with a 1-year maturity date. The Note was secured by the Thomas Emerald, as described by the attached copy of the Certificado. On January 18, 2013, Beach wired the $500,000 loan funds to "Wells Fargo, Beneficiary ABA . . . Mr. Tony Thomas/AT Emerald Transfer." AT Emerald never made any payments to Beach under the Note.[4] Beach later recorded a UCC-1 financing statement.

---

[4]At the hearing on the Motion, Thomas argued repreatedly that this was not his debt, but the debt of AT Emerald. Beyond a short statement in the brief, Thomas makes no argument and cites no law in this appeal that Beach sued the wrong party. Even if Thomas had adequately raised the issue in this appeal, it is easily rejected. Thomas's Schedule F (and amended Schedule F) admits that he owes a $540,000 debt to Beach. He did not mark the debt as disputed, contingent, or unliquidated. Furthermore, Beach filed a proof of claim against Thomas and his wife personally; no objection to that proof of claim was ever filed. A claim for which a proof of claim is filed is deemed allowed unless a party in interest objects. § 502(a). Here, no party in interest objected to the proof of claim filed by Beach.

On March 4, 2014, Thomas and his wife, Wendi Thomas,[5] filed a joint chapter 11 bankruptcy in the District of Nevada. Simultaneously, AT Emerald filed a separate chapter 11 case in the District of Nevada. On May 12, 2014, the bankruptcy court ordered the two cases to be jointly administered. They were later converted to chapter 7. Thomas listed as an asset in his Schedule B a 100% interest in AT Emerald valued at $200,000,000 "based on appraisal." AT Emerald listed in its Schedule B: "[o]ne Emerald Based on Appraisal Value Exceeds $200,000,000.00."

1) Valuation and Alleged Sale

At all times relevant, the Thomas Emerald was held at Sarasota Vault in Sarasota, Florida ("Sarasota Vault"). On June 20, 2014, Beach filed an Ex Parte Motion for an Order Requiring the Person Most Knowledgeable of the Sarasota Vault to Appear for 2004 Examination (the "Rule 2004 Examination" motion).

Three days later, on June 23, 2014, Thomas and AT Emerald filed in their respective bankruptcy cases identical motions to sell the Thomas Emerald free and clear of liens (the "Motion to Sell"). Attached to the Motion to Sell was a Purchase and Sale Agreement dated June 19, 2014, between AT Emerald and Koyo Shipping and Trading Corporation ("Koyo Agreement") with all references to the sales price redacted. The Koyo Agreement is signed by one "David Charles Clarke, Finance Director & International Trustee." While the sale price under the Koyo Agreement is not known, according to the Motion it was allegedly

_____

[5]This action was dismissed as to Wendi Thomas; Debtor Anthony Thomas is the only appellant.

-5-

"hundreds of millions of dollars." Beach alleged that the Koyo Agreement was fabricated in order to delay any inspection or appraisal of the Thomas Emerald.

The Rule 2004 Examination was scheduled for July 10, 2014. Beach received a letter on July 2 from counsel for Sarasota Vault. The letter informed Beach that access to the subject box at Sarasota Vault required two keys; Sarasota Vault had one key, and Thomas had the other. Without Thomas's key, the box containing the Thomas Emerald could be opened only by having a locksmith drill and replace the locks, for a cost of roughly $200. On July 9, Beach continued the 2004 Examination.[6] The Motion to Sell, along with accompanying declarations, was withdrawn by AT Emerald on the same day.[7]

On July 17, Beach filed a motion to compel Thomas to produce the key or alternatively to authorize the drilling of the lock at Sarasota Vault. At a hearing on that motion, the court ordered AT Emerald and/or its principal, Thomas, to turn over the Sarasota Vault key by August 1. Sometime after that hearing and before August 8, Thomas contacted Beach via text message:

> John you said you weren't going to do anything to interfere with the sale of the Emerald I told you we are in contract and the buyer doesn't want you or anyone else to view the Emerald because he's already approved it for the purchase. The buyer said he would back out of the sale agreement if anybody interfered with the sale my attorneys are going to opposed you

---

[6] It is not clear if the examination was ever conducted.

[7] While the Motion to Sell was withdrawn from the AT Emerald bankruptcy docket, the Motion to Sell filed by Thomas in his individual bankruptcy was not withdrawn. Curiously, the Motion to Sell in Thomas' case was granted on July 23, 2014. No sale ever occurred.

-6-

view the Emerald today 10am o'clock. [sic] A separate text stated: "[t]he emerald is sold and I'm waiting for confirmation, when they will wire the funds. I don't see your point in going to Florida."

On August 8, Thomas sent Beach a text message containing a letter allegedly from David C. Clarke of Koyo Shipping ("Koyo Letter"), the same individual who signed the original agreement. The Koyo Letter stated that Koyo had entered into an agreement with Thomas for the sale of the Thomas Emerald. The letter further stated that Mr. Clarke and an appraiser had visited the vault on July 7 to inspect the stone and had approved it for sale. The letter further warned that if Beach visited the vault, Koyo would either have to withdraw from the agreement or arrange another inspection of the Thomas Emerald.

Thomas subsequently produced the key. The Sarasota Vault produced a sign-in sheet for the box where the Thomas Emerald is stored, which showed two entries: 1) May 23, 2008 by A. Thomas, and 2) July 9, 2014 by A. Thomas. Beach cites the sign-in sheet as evidence that nobody other than Thomas visited the vault, and that the Koyo Letter was a "sign of desperation" after Thomas failed to prevent an independent inspection of the Thomas Emerald. Beach argues that the Koyo Agreement for an alleged sale of the Thomas Emerald for hundreds of millions of dollars was a "fantasy sale" which not only failed to materialize, but that nothing was ever heard again from "David Clarke" of "Koyo Shipping and Trading Corporation."

2)  The Adversary Action

Beach filed this adversary proceeding on November 24, 2014.

The First Amended Complaint charges that Thomas misrepresented the value of the stone in obtaining the loan and that he knew that the value of his interest in AT Emerald, set forth as $200,000,000 in Thomas' schedules, was not accurate. Beach further argues in the Motion that Thomas's attempts to block an independent inspection of the Thomas Emerald indicate an attempt to prevent the true value of the stone from being determined.

On January 25, 2016, Beach filed the Motion, along with a Statement of Undisputed Facts as required by District of Nevada Local Bankruptcy Rule 7056. Thomas, who was representing himself, failed to file a written response to the Motion.

A hearing on the Motion was held on March 9, 2016. Thomas appeared in court and was permitted to argue. Thomas's statements at the hearing on the Motion were wide-ranging. He addressed the uniqueness of the Thomas Emerald and denied the allegations that he had fabricated the Koyo Letter. Thomas discussed the circumstances under which he obtained the Thomas Emerald:

> You know, these emeralds were a curse to me. I bought them in Brazil, you know, from people that were supposed to know what they were. I went and got expert appraisals, and they ended up being worth a lot more. The next thing you know, I'm losing my house and everything I got, and I did nothing wrong. I have committed no fraud to nobody. [sic]

Our review of the bankruptcy court transcript leads us to conclude that Thomas's oral opposition was not considered in the court's ruling on the Motion. At the end of Thomas's statement, the judge stated:

> There was a default in responding to this. I am entering judgment against Mr. Thomas. . . . Please upload an order consistent with the representations

made and the evidence produced. Judgment was entered on April 13, 2017, and Thomas timely appealed. On appeal, Thomas now argues that the court did not allow him to present an oral opposition or grant him a continuance to file a written opposition.[8]

Lastly, Thomas argues that, whether or not he raised any disputed facts at the hearing on the Motion, summary judgment should not have been entered because plaintiff failed to offer sufficient evidence to support the alleged claims.

**ISSUES**

I.    Did the bankruptcy court err in granting summary judgment in favor of Beach under § 523(a)(2)(A)?

II.   Did the bankruptcy court err in granting summary judgment in favor of Beach for fraud under Nevada state law?

III.  Did the bankruptcy court err in granting summary judgment in favor of Beach under § 727(a)(4)(A)?

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), (J), and (O). See Dietz v. Ford (In re Dietz), 469 B.R. 11, 22 (9th Cir. BAP 2012), aff'd, 760 F.3d 1038 (9th Cir. 2014) (bankruptcy court may enter a monetary judgment on a disputed state law fraud claim in the course of determining that a debt is nondischargeable). We have

---

[8]Because we determine that the decision should be reversed on other grounds, we do not reach the question of whether the bankruptcy court erred in denying Thomas a continuance to file a written opposition to the Motion.

jurisdiction over this appeal under 28 U.S.C. § 158.

**STANDARD OF REVIEW**

We review the bankruptcy court's granting of a summary judgment motion de novo. Foster v. Double R Ranch Ass'n (In re Foster), 435 B.R. 650, 655 (9th Cir. BAP 2010).[9]

**DISCUSSION**

To succeed on a summary judgment motion, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 272 (9th Cir. BAP 1990). The moving party must support its motion with credible evidence, as defined in Civil Rule 56(c), which would entitle it to a directed verdict if not controverted at trial. Id. If a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Civil Rule 56(e)(2). The court must view all the evidence in the light most favorable to the nonmoving party. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). "Even where no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support

---

[9]The order granting summary judgment includes findings of fact. Findings of fact on summary judgment pinpoint for the appellate court which facts are undisputed and indicate the basis for summary judgment. Beach argues that because the lower court entered "findings of fact," a clearly erroneous standard should apply. This is incorrect. As stated by the 9th Circuit: "[t]hey are not findings of fact in the sense that the trial court has weighed the evidence and resolved disputed factual issues. As the findings are not entitled to deference upon review, the clearly erroneous standard is simply inapplicable." Heiniger v. City of Phoenix, 625 F.2d 842, 843 (9th Cir. 1980).

of the motion is insufficient." Hoover v. Switlik Parachute Co., 663 F.2d 964, 967 (9th Cir. 1981).

The bankruptcy court apparently granted the motion for summary judgment solely because Thomas did not file a timely opposition. This was error. Under governing Ninth Circuit precedent, even if a motion for summary judgment is unopposed, the court must evaluate the sufficiency of the movant's evidence. Id. The bankruptcy court did not do so. As explained below, the movant's evidence was not sufficient to sustain summary judgment.

## I. Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." § 523(a)(2)(A). A creditor's claim of nondischargeability based on § 523(a)(2)(A) must satisfy five elements: (1) the debtor made a false statement or engaged in deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation. Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). In order to avoid unjustifiably impairing a debtor's fresh start, exceptions to discharge should be strictly construed against creditors and in favor of debtors. Klapp v. Landsman, 706 F.2d 998, 999 (9th Cir. 1983).

-11-

1)    False Statement or Deceptive Conduct

The false statement or deceptive conduct relied on in this matter was an alleged representation by Thomas that the Thomas Emerald could provide adequate collateral to secure the full amount of the loan.  Attached to the Note and security agreement was a copy of the Certificado claiming the value of the Thomas Emerald to be $800,000,000.  Beyond the Certificado, Beach provided no evidence in support of the Motion that Thomas represented at the time of the loan that the loan would be fully secured.  The Note itself makes no such statement, nor does it allege that the Certificado represents the true value of the Thomas Emerald.  The Certificado itself states that "it is entirely up to the owner of the crystal and the party interested in purchasing to establish the crystal's market value."  To establish that Thomas made a false statement, Beach relies in part on Request for Admission No. 2, which states:

> No. 2: Admit that you represented to Plaintiff that you could provide collateral to Plaintiff for loan proceeds in the form of the Thomas Emerald.
>
> A: Admit, Anthony Thomas represented this on behalf of AT Emerald, LLC.

This admission does not state, however, that the emerald would fully secure the value of the loan.[10]

---

[10]At oral argument in this appeal, Beach alleged that he had previously filed a declaration in the action in which Beach declared that Thomas represented that the value of the Thomas Emerald would be sufficient to completely secure repayment of the loan proceeds and that the declaration was referenced in Beach's motion for summary judgment.  The panel was not able to locate any such declaration on the docket of either the adversary or
(continued...)

-12-

Even if Thomas' statement is considered a representation that the Thomas Emerald would fully secure the loan, the true value of the emerald was not proven. Without an appraisal, the falsity of Thomas' representation that the loan would be fully secured is a disputed material fact.

Even without considering Thomas's oral statements, Beach's evidence and his argument showed that the Thomas Emerald is unique and that there is "nothing like it." Beach's own papers revealed a genuine issue of material fact regarding the falsity of Thomas' statements.

2)    Thomas Knew the Representation to be False

Assuming for purposes of this element that the statement was false, to prevail under § 523(a)(2)(A), it was insufficient for Beach to show that Thomas knew at the time of the loan that the $800,000,000 figure was a gross overvaluation; Beach must have shown that Thomas knew that the value of the Thomas Emerald was less than the amount of the loan. Even if Thomas believed at the time of the loan that the Thomas Emerald was only worth $600,000, the loan would still have been fully collateralized and therefore the second element would not be satisfied.

In a request for admission submitted with the Motion, Thomas denied that he knew that the Thomas Emerald was worth less than $200,000,000, or that he misrepresented the value of the Thomas Emerald to Beach in order to induce him to make the $500,000 loan.

---

[10](...continued)
main bankruptcy case, nor was the panel able to locate a reference to such a declaration in the Motion.

Beach alleges that the court can infer knowledge of the falsity of Thomas's alleged representation from the following "undisputed facts":

1) Thomas purchased the Thomas Emerald for $20,000 in 2001;

2) Thomas was "reduced to begging for money from Beach, even though he allegedly held a valuable stone, which could have been used to secure financing from a traditional lending source";

3) Thomas attempted to block an independent evaluation of the Thomas Emerald; and

4) "Thomas's production of the Koyo Letter, which threatened to pull out of a proposed purchase of the Thomas Emerald if anyone else looked at it."

Beach asked the court to infer from the circumstances surrounding the production of the Koyo Letter that there was no proposed sale and that Thomas fabricated the deal and the letter in order to forestall an appraisal because he knew it would reveal a low value. Drawing such an inference against Thomas, however, violates the requirement that, on summary judgment, the court must view all the evidence in the light most favorable to the nonmoving party. In re Barboza, 545 F.3d at 707. Beach asked the court to draw inferences against the nonmoving party. For example, Beach would like the court to infer from the Sarasota Vault sign-in sheet that nobody other than Thomas visited the vault. The sign-in sheet shows Thomas' signature for a date that appears to be "7/9/14," although the "9" is difficult to read. The Koyo Letter states that Mr. Clarke and his

-14-

appraiser visited the vault on July 7. In interrogatory No. 10, Thomas states that he met with Mr. Clarke and his appraiser on July 7 and they viewed the Thomas Emerald.

One reasonable inference from the facts in favor of the nonmoving party is that Thomas visited the vault and was accompanied by Mr. Clarke and an appraiser, who were simply not required to sign the sign-in sheet, on either July 7 or July 9. No evidence was introduced to show that the visit reflected on the sign-in sheet was not the visit described in the Koyo Letter and in the interrogatories.

In order to conclude that the Koyo Letter was a fabrication intended to forestall an inspection and appraisal, the court essentially had to make credibility findings against Thomas. While such a conclusion could be drawn at trial, it was not permissible on summary judgment. Cal. Steel & Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir. 1981).

More importantly, Beach never drew a clear connection between the alleged actions surrounding the Koyo Letter and Thomas' knowledge of the Thomas Emerald's value **at the time of the loan**. Beach did not meet his burden of showing that Thomas knew at the time the loan was made that the Thomas Emerald's value was less than the amount of the loan.

3)  Intent to Deceive

Intent to deceive may be inferred from the totality of circumstances. Eashai v. Eashai (In re Eashai), 87 F.3d 1082, 1087-88 (9th Cir. 1996). Where intent is at issue, summary judgment is seldom granted; however, "summary judgment is appropriate if all reasonable inferences defeat the claims of one

-15-

side, even where intent is at issue." Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999).

Beach argues that intent to deceive can be inferred from the same facts as those which establish knowledge. When viewed in a light most favorable to the nonmoving party, the record does not establish that Thomas intended to deceive Beach. For the foregoing reasons, the bankruptcy court erred in granting summary judgment in favor of Beach under § 523(a)(2)(A).[11]

## II. Nevada State Fraud Claim

Under Nevada law, plaintiff has the burden of proving each and every element of a fraudulent misrepresentation claim by clear and convincing evidence: (1) a false representation made by defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to plaintiff as a result of relying on the misrepresentation. Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386 (Nev. 1998); Bulbman, Inc. v. Nev. Bell, 825 P.2d 588, 592 (Nev. 1992).

---

[11]The result of this action differs from our decision in a similar action brought against Thomas by Kenmark Ventures, LLC ("Kenmark case"). Thomas v. Kenmark Ventures, LLC (In re Thomas), BAP No. NV-16-1058-KuLJu, 2017 WL 1160868 (9th Cir. BAP Mar. 28, 2017). The Kenmark case was decided after a trial and with significant evidence that was not before the court on this summary judgment motion. Our divergent results are a reflection of the differing procedural posture as well as the limited evidence in the record in this case. Also, Kenmark asserted a failure to disclose argument not made here.

-16-

The elements of fraud under Nevada state law are essentially identical to the elements of § 523(a)(2)(A); however, the state law fraud claim uses a higher "clear and convincing" evidentiary standard, whereas § 523(a)(2)(A) merely requires a preponderance of the evidence. In re Slyman, 234 F.3d at 1085. Given the similar intent requirements of the fraud claim in addition to the higher evidentiary standard, summary judgment on the Nevada state law fraud claim should be reversed for the same reasons as the § 523(a)(2)(A) claim.

## III. Section 727(a)(4)(A)

The bankruptcy court must grant a discharge to a chapter 7 debtor unless one of the twelve enumerated grounds in § 727(a) is satisfied. Claims for denial of discharge under § 727(a) are liberally construed in favor of the debtor and against the objector to discharge. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009).

A debtor's discharge may be denied if the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." § 727(a)(4)(A). To prevail on such a claim, plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." Retz v. Samson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010).

The "knowing and fraudulent" intent standard of § 727(a)(4) means that the debtor must have actual, not constructive, intent in concealing records or making an omission in schedules. Fogal

-17-

*Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 64 (9th Cir. BAP 1999). Fraudulent intent may be proved by circumstantial evidence; reckless disregard combined with other circumstances may support an inference of fraudulent intent. *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011) (reckless disregard shown where debtors who failed to disclose business interests were highly educated and had significant business experience); *In re Retz*, 606 F.3d at 1199; *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001); *In re Khalil*, 379 B.R. at 174. Intent can be established by consideration of the totality of the circumstances. *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir. 1985).

The allegedly false oath on which Beach's claim relies is the estimate of the value of Thomas' interest listed on Schedule B as "AT EMERALD, LLC 100% BASED ON APPRAISAL VALUE EXCEEDS $200,000,000." This statement is distinct from the value of the Thomas Emerald itself, which is valued in AT Emerald's separate bankruptcy case.[12] Beach failed to submit any evidence that this valuation of the Thomas Emerald was false or that Thomas made the statement with knowledge of its falsity or with fraudulent intent.

---

[12]Thomas correctly points out that Beach's statement of undisputed facts in support of the Motion attached and referenced only the value of the Thomas Emerald in the AT Emerald case and did not include the schedules of Thomas's personal bankruptcy. Thomas claims that the failure to attach the schedules to the Motion is a fatal flaw because no evidence was presented of a false oath; however, as noted previously, the panel has exercised its discretion to review the schedules filed on the docket.

Beach's argument regarding the "false oath" element of § 727(a)(4)(A) depends on the court believing Beach's assertion that Thomas's valuation of the Thomas Emerald was "not based in reality" or "fantastical." There is no evidence in the record as to the value of the Thomas Emerald other than the purchase price of $20,000 and the $800,000,000 Certificado appraisal, both of which date from roughly the same time. The only appraisal on the record far exceeds the scheduled value of the asset. Viewing the evidence in this record in favor of the nonmoving party, Thomas could have reasonably based his estimate on the Certificado.

Beach failed to establish that Thomas knowingly and fraudulently misrepresented the value of the Thomas Emerald in his bankruptcy schedules.

**CONCLUSION**

For the foregoing reasons, we REVERSE the bankruptcy court's determination on summary judgment as to § 523(a)(2)(A), § 727(a)(4)(A), and the Nevada state law fraud claim and REMAND the case for further proceedings.